# EXHIBIT A

| | |
|---|---|
| **NYC DEPARTMENT OF FINANCE**<br>**OFFICE OF THE CITY REGISTER**<br><br>This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document. | <br>2008123000129001002E4C09 |

**RECORDING AND ENDORSEMENT COVER PAGE** — PAGE 1 OF 12

**Document ID:** 2008123000129001    **Document Date:** 12-12-2008    **Preparation Date:** 12-30-2008
**Document Type:** MORTGAGE
**Document Page Count:** 11

| PRESENTER: | RETURN TO: |
|---|---|
| BARRETTA REALTY SKYLINE (PICK UP BRS)<br>16 COURT STREET SUITE 714<br>ASK ABSTRACT (ASK08-1121)<br>BROOKLYN, NY 11241<br>718-797-5444<br>kavita.jurakan@realtyskyline.com | QAISER JAFFERY<br>HABIB AMERICAN BANK<br>99 MADISON AVE<br>NEW YORK, NY 10016 |

**PROPERTY DATA**

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| MANHATTAN | 1021 | 5 | Entire Lot | 247 WEST 49TH STREET |

**Property Type:** OTHER

**CROSS REFERENCE DATA**

CRFN_____ *or* Document ID_____ *or* _____ Year____ Reel ___ Page ____ *or* File Number_____

**PARTIES**

| MORTGAGOR/BORROWER: | MORTGAGEE/LENDER: |
|---|---|
| 249 W. 49TH STREET, LLC<br>167 MADISON AVENUE, SUITE 204<br>NEW YORK, NY 10016 | HABIB AMERICAN BANK<br>99 MADISON AVENUE<br>NEW YORK, NY 10016 |

**FEES AND TAXES**

| Mortgage | | | | |
|---|---|---|---|---|
| Mortgage Amount: | $ | 2,800,000.00 | Filing Fee: $ | 0.00 |
| Taxable Mortgage Amount: | $ | 2,800,000.00 | NYC Real Property Transfer Tax: | |
| Exemption: | | | $ | 0.00 |
| TAXES: County (Basic): | $ | 14,000.00 | NYS Real Estate Transfer Tax: | |
| City (Additional): | $ | 31,500.00 | $ | 0.00 |
| Spec (Additional): | $ | 7,000.00 | | |
| TASF: | $ | 0.00 | | |
| MTA: | $ | 8,400.00 | | |
| NYCTA: | $ | 17,500.00 | | |
| Additional MRT: | $ | 0.00 | | |
| TOTAL: | $ | 78,400.00 | | |
| Recording Fee: | $ | 92.00 | | |
| Affidavit Fee: | $ | 0.00 | | |

**RECORDED OR FILED IN THE OFFICE OF THE CITY REGISTER OF THE CITY OF NEW YORK**

Recorded/Filed    12-31-2008 10:10
City Register File No.(CRFN):
2008000492524

*City Register Official Signature*

# MORTGAGE

THIS MORTGAGE made this 12th day of December, 2008, between 249 W. 49TH STREET, LLC, a New York limited liability company with an office at 167 Madison Avenue, Suite 204, New York, NY 10016 ("Mortgagor") and Habib American Bank, located at 99 Madison Avenue, New York, NY 10016 ("Mortgagee");

WITNESSETH that to secure payment of a principal indebtedness in the sum of **TWO MILLION EIGHT HUNDRED THOUSAND DOLLARS ($2,800,000)** (the "Loan") lawful money of the United States, due on in accordance with a certain written promissory note (hereinafter "Note") dated today in the same amount as the Loan, and also to secure payment of all interest, late charges, and other sums, charges, premiums, indemnification amounts, or other amounts, direct or indirect, absolute or contingent, joint or several, liquidated or not liquidated, due or to become due, including future advances, to Mortgagee under the Note and this mortgage and all extensions, renewals, modifications, substitutions, and replacements of either of them, and to secure performance by Mortgagor of all of its other obligations and covenants under the Note and this mortgage, Mortgagor has mortgaged, given, granted, released, assigned, transferred, given a security interest in, and set over unto Mortgagee, and by these presents does hereby mortgage, give, grant, release, assign, transfer, give a security interest in, and set over unto Mortgagee, its successors and assigns forever, the following described property and rights:

ALL that certain plot, piece or parcel of land, more particularly described on Schedule "A" attached hereto and made a part hereof and the buildings and improvements now or hereinafter located thereon (the "Improvements")—said premises being hereinafter referred to as the "Premises";

SAID premises also being commonly known as **249 WEST 49TH STREET, NEW YORK, NY and as section 4, block 1021, lot 5,** and being and intended to be the same premises conveyed to mortgagor by JOLIN LLC, as grantor, by a certain deed of even date herewith and intended to be recorded simultaneously herewith.

THIS is a purchase money mortgage given to secure a portion of the purchase price for which the aforesaid deed to mortgagor was executed and delivered.

THE real property covered by this mortgage is **NOT** principally improved or to be improved by one or more structures containing in the aggregate not more than six residential dwelling units, each having their own separate cooking facilities.

TOGETHER WITH all rights, title and interest of the Mortgagor in and to the following property, rights and interests (the Premises and the Improvements together with such property, rights and interest being hereinafter collectively called the "Mortgaged Property"):

(a) all easements, rights-of-way, gores of land, streets, ways, alleys, passages, sewer rights, and all estates, rights, titles, interests, privileges, liberties, tenements, hereditaments, and appurtenances of any nature whatsoever, in any way belonging, relating or pertaining to the Mortgaged Property and all land lying in the bed of any street, road or avenue, opened or proposed, in front of or adjoining the Premises to the center line thereof;

(b) all machinery, apparatus, equipment, furniture, fittings, fixtures and other property of every kind and nature whatsoever owned by the Mortgagor in connection with the Mortgaged Property, or in which the Mortgagor has or shall have an interest, now or hereafter located upon the Mortgaged Property, and usable in connection with the present or future operation and occupancy of the Mortgaged Property, and all buildings, equipment, materials and supplies of any nature whatsoever owned by and now or hereafter located upon the Mortgaged Property, as to which, and as to all of the Mortgaged Property, this Mortgage constitutes a security agreement under the Uniform Commercial Code (in addition to and not in lieu of any other security agreement between the parties);

(c) all awards or payments, including interest thereon, and the right to receive the same, which may be made with respect to the Mortgaged Property, whether from the exercise of the right of eminent domain (including any transfer made in lieu of the exercise of said right), or for any other injury to or decrease in the value of the Mortgaged Property;



1

(d) all leases and other agreements affecting the use or occupancy of the Mortgaged Property now or hereafter entered into, and the right to receive and apply the rents, issues and profits of the Mortgaged Property to the payment of the aforementioned indebtedness;

(e) all proceeds of any unearned premiums on any insurance policies covering the Mortgaged Property, including, without limitation, the right to receive and apply the proceeds of any insurance, judgments, or settlements made in lieu thereof, for damage to the Mortgaged Property;

(f) the right, in the name and on behalf of the Mortgagor to appear in and defend any action or proceeding brought with respect to the Mortgaged Property and to commence any action or proceedings to protect the interest of the Mortgagee in the Mortgaged Property.

TO HAVE AND TO HOLD the above granted and described Mortgaged Property unto and to the proper use and benefit of the Mortgagee, and the successors and assigns of the Mortgagee, forever.

AND the Mortgagor, for further securing the payment of said Note, together with interest thereon and other charges, amounts, expenses due under such Note or this mortgage, hereby mortgages to the Mortgagee, and grants Mortgagee a security interest in, the Mortgaged Property.

1. **CROSS DEFAULT; APPLICATION OF FUNDS.** A default by Mortgagor under this Mortgage, any other mortgage on the real property subject to this mortgage, or any of the Loan Documents constitutes a default by Mortgagor under every other loan obligation and/or agreement between Mortgagor and Mortgagee. A default by Mortgagor under any other loan obligation and/or agreement between Mortgagor and Mortgagee constitutes a default by Mortgagor under this Mortgage and/or under the Note, this Mortgage, or any other documents executed in connection with this loan by or on behalf of Mortgagor to Mortgagee and/or by any guarantor and/or any person/entity affiliated or related in any way to Mortgagor or any guarantor (collectively the "**Loan Documents**"). Notwithstanding any contrary provision elsewhere in this instrument, at any time that Mortgagee is holding any other mortgage(s) securing either (a) the same, or a different portion of, the indebtedness secured by this Mortgage, or (b) any other indebtedness or obligation/loan of Mortgagor, Mortgagee shall have the sole discretion to determine how to apply wholly or partially any payments made by, or on behalf of, Mortgagor to and among each indebtedness, obligation, or loan, and/or portion of any of same, and/or mortgage pursuant to which any amounts (whether monthly payments, overdue principal, late charges, taxes, insurance premiums, and/or any other amounts or items) are due.

2. Mortgagor's sole member has duly unanimously authorized execution of this mortgage.

3. **LATE CHARGES**. In the event that any payment shall become overdue for a period in excess of fifteen days after the due date, a "late charge" of FIVE per cent of each dollar ($1.00) so overdue will be charged by the Mortgagee for the purpose of defraying the expense incidental to handling such delinquent payment, and such late charges are also secured by this Mortgage.

4. **PAYMENT**. The Mortgagor promises to pay the principal and interest, and/or any other amount, due under the Note and/or other obligation secured by this Mortgage, when due and payable, plus all other indebtedness secured by this Mortgage.

5. **WARRANTY OF TITLE**. The Mortgagor warrants the title to the Mortgaged Property, and warrants and represents that the full amount owed as described above is secured by this Mortgage and that this Mortgage is a valid first mortgage lien on, and security interest in, the Premises and Mortgaged Property.

6. **INSURANCE**. The Mortgagor will keep the buildings and improvements on the Mortgaged Property, as hereinbefore provided, insured against loss by fire and the perils covered by the usual "extended coverage" endorsement, (and if this Mortgage includes personal property, said insurance shall include a "Lender's Loss Payable" clause) in an amount to be approved by the Mortgagee, not exceeding in the aggregate one hundred percent (100%) of their full insurable value, and in companies to be approved by the Mortgagee, and will on demand exhibit to the Mortgagee receipts evidencing payment of the premiums for such insurance and the Mortgagor will assign and deliver the policy or policies of such insurance to the Mortgagee, which policy or policies shall have endorsed thereon the standard New York Mortgagee Clause in the name of the Mortgagee in such manner and form as approved by the Mortgagee, that the Mortgagee shall hold such policy or policies as collateral and further security for the payment of the indebtedness and interest secured by this Mortgage; and, in default of so doing, the Mortgagee may procure such insurance, and pay the premiums therefor, and in such event the Mortgagor will on demand pay to the Mortgagee such premiums so paid, with

2



## SCHEDULE A

## DESCRIPTION

Title Number: **ASK08-1121**

ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the City, County and State of New York more particularly described as follows:

BEGINNING at a point on the northerly side of 49th Street, distant one hundred feet easterly from the corner formed by the intersection of the easterly side of Eighth Avenue with the northerly side of 49th Street;

RUNNING THENCE northerly and parallel with the said easterly side of Eighth Avenue, one hundred feet five inches to the center line of the block;

THENCE easterly and parallel with the said northerly side of 49th Street, twenty-five feet;

THENCE southerly and again parallel with the said easterly side of Eighth Avenue, one hundred feet five inches to the said northerly side of 49th Street;

THENCE westerly along the said northerly side of 49th Street, twenty-five feet to the point or place of BEGINNING.



interest from the date of payment, and the same shall be deemed to be secured by this Mortgage and shall be collectible thereupon in like manner as the principal monies; and, should the Mortgagee by reason of such insurance receive any sum or sums of money for damage by the perils insured against, such sums may be retained and applied by the Mortgagee to payment of the indebtedness and interest secured by this Mortgage, or the same may be paid over either wholly or in part to the Mortgagor for the repair of said buildings or for the erection of new buildings in their place, or for any other purpose or object satisfactory to the Mortgagee, and, if the Mortgagee receives and retains insurance money for such damage, the lien of this Mortgage shall be affected only by the reduction of the amount of said lien by the amount of insurance money received and retained by said Mortgagee. If the Mortgaged Property is determined to be in a flood hazard area under the Flood Disaster Act of 1973, the Mortgagor must provide the Mortgagee with insurance against loss or damage to the Mortgaged Property by flood to be written by a Company, on such terms, in such form and for such periods and amounts, as may be satisfactory to Mortgagee.

5. **TAXES.** The Mortgagor will pay all taxes, including corporate franchise taxes, if applicable, assessments and/or water rates and/or sewer rates and/or any and all taxes, charges, assessments which are applicable to the use and/or occupancy and/or existence of the Mortgaged Property; and in the event that the Mortgagor fails to pay same, Mortgagee may (but is not obligated to) pay same and the Mortgagor will, on demand, pay to the Mortgagee any amounts so paid by the Mortgagee with interest from the day of payment, and the same shall be deemed to be secured by the Mortgage and shall be collectible thereupon in like manner as the principal monies.

7. **ESCROWS FOR TAXES, INSURANCE.** Notwithstanding any contrary provision of this mortgage, upon written request from mortgagee, at any time and/or from time to time at Mortgagee's sole discretion during the life of this mortgage, mortgagor shall pay to mortgagee on or before the first day of each month or such other day of the month selected by mortgagee, a sum equal to one-twelfth of the estimated annual amount of all taxes, assessments, water, and/or sewer and/or comparable charges, and of all premiums for insurance required hereunder. Mortgagee in its sole discretion shall determine the necessary and/or fractional amounts to be deposited so that, as of one month prior to the due dates of each such obligation, mortgagee shall hold sufficient funds to timely and fully pay the obligation or installment of same. Mortgagee shall hold amounts payable hereunder without interest. Mortgagee shall apply such amounts to payment of the obligations to which the amounts relate, and, at mortgagee's option, in such order or priority as mortgagee shall determine, on or before the dates on which the same or any of them would delinquent. If at any time before the due date of any of such obligations, mortgagee determines that the amounts on deposit do not suffice to timely and fully pay any such obligation, then mortgagor shall deposit the amount of the deficiency with mortgagee within ten (10) days after demand. This paragraph shall not be deemed to affect any right or remedy of mortgagee under this mortgage or under any statute or rule of law to pay such amount and to add the amount so paid to the outstanding debt hereby secured. If there is a default under this mortgage, mortgage may, at its option and without notice to mortgagor, apply any funds held under this paragraph in payment of any amounts due under this mortgage. Any amount(s) determined by Mortgagee to be due hereunder (whether single or recurring or otherwise) shall be payable upon not less than five (5) business days notice from Mortgagee; one or more payments may be specified in any such notice.

8. **NO ALTERATIONS.** No building or improvement presently on or hereinafter constructed on the premises shall be removed, demolished or altered in such a manner as to adversely affect its structural strength or its value, without the consent of the Mortgagee.

9. **ESTOPPEL CERTIFICATE.** The Mortgagor, within five (5) business days upon request in person or written notice will furnish a written statement duly acknowledged of the amount due on this Mortgage and whether any offsets or defenses exist against the mortgage debt.

10. **SECTION 13 OF THE LIEN LAW.** The Mortgagor will receive the proceeds of indebtedness secured by this Mortgage, subject to the trust fund provisions of Section 13 of the Lien Law.

11. **NO RELEASE OR DISCHARGE UNTIL FULL PAYMENT; RIGHT TO RELEASE ANY PORTION OF THE PROPERTY..** Until the full payment of all indebtedness evidenced by the Note with interest at the rate therein specified, (A) regardless of any subsequent agreement with any other person, firm or corporation modifying, amending, altering or changing the terms of the Note or any agreement referred to in said Note or this Mortgage, or spreading the lien thereof, or consolidating the same with any other mortgage, the obligations of the Mortgagor to pay the indebtedness and interest at the rate specified in the Note secured by this Mortgage shall not be released or discharged or affected in any way, and/or (B) Mortgagor shall not, at the sole discretion of the Mortgagee, be entitled to a release or satisfaction of the lien of this mortgage with respect to any of the Mortgaged Property. Notwithstanding the foregoing, Mortgagee

3



may release any portion of the Mortgaged Property for such consideration as Mortgagee may require without, as to the remainder of the Mortgaged Property, in any way impairing or affecting the lien or priority of this instrument, or improving the position of any subordinate lien holder with respect thereto, except to the extent that the obligations hereby secured shall have been reduced by the actual monetary consideration, if any, received by Mortgagee for such release, and may accept by assignment, pledge, or otherwise any other property in place thereof as Mortgagee may require without being accountable for so doing to any other lien holder; and this instrument shall continue as a lien and security interest in the remaining portion of the Mortgaged Property.

12. **BOOKS, RECORDS AND FINANCIAL STATEMENTS.** The Mortgagor will at all times keep proper books and records and accounts in accordance with generally accepted accounting principles consistently applied and shall within five (5) business days of demand:

    a. permit the Mortgagee or its representatives to examine such books and records and all supporting vouchers and data at any time from time to time on request, at its offices, or at such other location as may be mutually agreed upon.

    b. provide a balance sheet truly presenting the financial condition of the Mortgagor as of the close of each fiscal year and statements of cash flow truly presenting the results of operations of the Mortgagor for such fiscal year, and a statement of changes in financial position, all prepared in accordance with generally accepted accounting principles consistently applied and "reviewed" by independent certified public accountants acceptable to the Mortgagee, together with, if requested, referred to in the preceding subparagraph, a certificate of the independent certified public accountants who reviewed said annual report stating that in making the examination necessary to said review of the annual report they have obtained no knowledge of any default by the Mortgagor in the performance of any of the covenants, conditions, agreements or warranties under this Mortgage and the Note, or, if they shall have obtained knowledge of any such default, the nature thereof.

    c. within five business days after the close of each fiscal quarter, provide to Mortgagee a compiled statement of financial position truly presenting the financial condition of the Mortgagor as of the close of such fiscal quarter and compiled statements of operations and retained earnings and changes in financial position truly presenting activities of the Mortgagor for such fiscal quarter, all prepared in accordance with generally accepted accounting principles consistently applied and verified by the President and Treasurer of the Mortgagor.

    d. provide a certificate of the President, a Vice President, or the Treasurer of the Mortgagor with knowledge of the facts in question stating that a review of the activities of the Mortgagor to date during the fiscal year in question has been made under [his/her] supervision with a view to determining whether the Mortgagor has fulfilled all of its obligations under this Mortgage and the Note, and that the Mortgagor has fulfilled all such obligations, or, if not, specifying all defaults of which [he/she] has knowledge.

13. **INDEMNIFICATION.** Mortgagor hereby covenants and agrees, at its sole cost and expense, to indemnify, protect, defend and save harmless Mortgagee from and against any and all damages, losses, liabilities, obligations, penalties, claims, litigation, demands, defenses, judgments, suits, actions, proceedings, costs, disbursements and/or expenses (including, without limitation, attorneys', consultants' and experts' fees, expenses and disbursements) of any kind or nature whatsoever by whomever asserted which may at any time be imposed upon, incurred by or asserted or awarded against Mortgagee relating to, resulting from or arising out of the past, present or future (a) use of the Mortgaged Property for the storage, treatment, generation, transportation, processing, handling, production or disposal of any Hazardous Substance or as a landfill or other waste disposal site or for military, manufacturing or industrial purposes; (b) presence of any Hazardous Substances or a Release or the threat of a Release on, at or from the Mortgaged Property; ©) appropriate investigative, containment, removal, clean up and other remedial actions with respect to a Release or the threat of any Release on, at or from the Mortgaged Property; (d) human exposure to any Hazardous Substance or nuisances of whatever kind to the extent the same arise from the condition of the Mortgaged Property or the ownership, use, operation, sale, transfer or conveyance thereof; (e) violation of any applicable environmental law; or (f) noncompliance with any environmental permit.

    a. The liability of Mortgagor to Mortgagee hereunder shall in no way be limited, abridged, impaired or otherwise affected by (I) any amendment or modification of the Note; (ii) any increase in the amount of the Note or the extension of any additional debt to the Mortgagor; (iii) any extensions of time for payment or performance required by the Note; (iv) the release of Mortgagor, any guarantor of this loan or any other person from the performance or observance of any of the agreements, covenants, terms or conditions

4

contained in the Note or this Mortgage; (v) any exculpatory provision contained in any of the loan documents or any other documents executed in connection with this loan by or on behalf of the Mortgagor to the Mortgagee (the "Loan Documents") limiting Mortgagee's recourse to property encumbered by the Mortgage or to any other security or limiting Mortgagee's rights to a deficiency judgment against Mortgagor; (vi) any applicable statute of limitations; (vii) any investigation or inquiry conducted by or on the behalf of Mortgagee or any information which Mortgagee may have or obtain with respect to the environmental or ecological condition of the Mortgaged Property; (viii) the sale, assignment or foreclosure of the Note or this Mortgage; (ix) the sale, transfer, conveyance or lease of all or part of the Mortgaged Property; (x) the dissolution or liquidation of Mortgagor; (xi) the death or legal incapacity of the Mortgagor; (xii) the release or discharge, in whole or in part, of the Mortgagor in any bankruptcy, insolvency, reorganization, arrangement, readjustment, composition, liquidation or similar proceeding; or (xiii) any other circumstances which might otherwise constitute a legal or equitable release or discharge, in whole or in part, of Mortgagor under this Mortgage.

b. For purposes of this paragraph, "Hazardous Substance" means, without limitation, any flammables, explosive, radon, radioactive materials, asbestos, urea formaldehyde foam insulation, polychlorinated-biphenyls, petroleum and petroleum-based products or by-products, methane, hazardous materials, medical waste, hazardous wastes, hazardous or toxic substances or related materials, as defined in the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended (42 U.S.C. Sections 9601, *et seq.*), the Hazardous Materials Transportation Act, as amended (49 U.S.C. Sections 1801, *et seq.*), the Toxic Substances Control Act, as amended (15 U.S.C. Sections 2601, *et seq.*), Articles 15 and 27 of the New York State Environmental Conservation Law and in the regulations promulgated thereunder. The term "Hazardous Substance" does not include consumer products which are stored and used by a consumer with reasonable care and for their intended use.

c. For purpose of this paragraph, "Release" means any spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, dumping, or disposing into the environment, including the abandonment or discarding of barrels, containers, and other receptacles containing any Hazardous Substance.

14. **MORTGAGE TAX**. Mortgagor agrees that in the event that mortgage recording tax is required for any reason whatsoever, Mortgagor will pay said tax on demand to Mortgagee; and if Mortgagor fails to pay said tax, the Mortgagee may pay same. The amounts paid by the Mortgagee, plus interest at the rate set forth in the Note from the date of payment, shall be deemed to be secured by this Mortgage and shall be collected in like manner as the principal monies.

15. **DEFAULT**.

a. Provided that this paragraph shall not be deemed to limit or modify any of the terms of the Note or rights of the Mortgagee thereunder, the Mortgagee shall be entitled, at its option, to declare the Mortgagor in default and the whole of the indebtedness and interest to be immediately due and payable:

(a) after failure to pay any installment of principal or of interest, and/or any other amount due under the obligation secured by this mortgage, for fifteen days (15) days

(b) after failure to pay any tax, water rate or assessment, or to exhibit to the Mortgagee receipts evidencing payment thereof, within ten (10) business days after notice and demand;

(c) after failure to pay any premiums on the policies insuring the buildings and improvements on the Mortgaged Property, or to exhibit to the Mortgagee receipts evidencing payment thereof, or to assign and deliver such policies to the Mortgagee, or to reimburse the Mortgagee for premiums paid on such insurance, within ten (10) business days after notice and demand;

(d) after failure, upon request, to furnish a statement of the amount due on this Mortgage and whether any offsets or defenses exist against the mortgage debt, as hereinbefore provided;

(e) upon the actual or threatened removal or demolition of any building or improvement on the Mortgaged Property or the commission of any waste on the Mortgaged Property;

(f) upon the actual or threatened removal by anyone of any fixtures subject to the lien of this Mortgage;

(g) upon failure of the Mortgagor to notify the Mortgagee in writing within five (5) business days after loss

5



or damage caused by fire or other casualty to the Mortgaged Property, or any part thereof, and prior to making of any repairs thereto, or the refusal of the Mortgagor to permit the Mortgagee to inspect such loss or damage prior to the making of any repairs thereto;

(h) upon failure to pay any Mortgage tax now due or hereafter due on this Mortgage within five (5) business days after notice and demand given by the Mortgagee to the Mortgagor;

(I) in the event that the Mortgagor or any owner of an interest in Mortgagor conveys, sells, assigns, encumbers, or otherwise transfers, whether by operation of law or otherwise, including a voluntary conveyance as a result or in lieu or in anticipation of the exercise of the right of condemnation or eminent domain, either the Mortgaged Property, or any part thereof, or any interest therein or in Mortgagor, without the prior written consent of the Mortgagee;

(j) in the event that the Mortgagor assigns the rents, or any part thereof, of the Mortgaged Property or accepts prepayment of rents with respect to all or any part of the Mortgaged Property covering a period greater than two (2) month(s);

(k) upon failure of the Mortgagor to cure any violation of any governmental requirements respecting the Mortgaged Property including, without limitation, any laws, rules or regulations governing hazardous waste removal and cleanup or arising from an intentional or unintentional action or omission of the Mortgagor or any previous owner and/or operator of the Mortgaged Property, within ten (10) business days after receipt of written notice and demand from the Mortgagee; or, if in the reasonable judgment of the Mortgagee, any said violation cannot be cured within said ten (10) business day period, failure to either commence a cure within said ten (10) business day period and/or to pursue said cure diligently until completed;

(l) upon the breach by the Mortgagor of any covenant or provision contained in this Mortgage or in the Loan Documents, or upon the default in any debt instrument, term loan agreement, building loan agreement, environmental indemnification agreement or any instrument of collateral security delivered by or on behalf of the Mortgagor to the Mortgagee;

(m) upon the imposition of any mortgage, liens, charges or encumbrances upon the Mortgaged Property after the date hereof, which mortgage, liens, charges or encumbrances are not released, vacated, suspended, discharged, or bonded to the satisfaction of the Mortgagee within ten (10) business days of their imposition;

(n) in the event that the Mortgagor fails to submit to the Mortgagee the financial statements as required elsewhere herein, and continuance of such failure for fifteen (15) business days after receipt of written notice from the Mortgagee;

(o) voluntary suspension of all or a substantial part of its business as a going concern by the Mortgagor, insolvency of the Mortgagor or of any entity or person (hereinafter referred to as a "Guarantor") guaranteeing payment of the indebtedness; commencement of any proceedings under any bankruptcy or insolvency law by the Mortgagor or any Guarantor; an assignment for the benefit of creditors by the Mortgagor or any Guarantor; application for consent to the appointment of any receiver or trustee or custodian for the Mortgagor or any Guarantor of all or any substantial part of the properties of either; or assignment to an agent authorized to liquidate any substantial part of the assets of the Mortgagor or any Guarantor;

(p) commencement of any proceedings under any bankruptcy or insolvency law against the Mortgagor or any Guarantor, which proceedings are involuntary in nature, and failure to have said proceedings dismissed within ten business days after the commencement thereof; or issuance of a writ or warrant or attachment of similar process against all or any substantial portion of the property of the Mortgagor or any Guarantor, and failure to have such writ or attachment of similar process released or bonded within ten business days after its issuance;

(q) default beyond any grace period pursuant to the terms and conditions of any other loan by Mortgagee to Mortgagor;

(r) if any information furnished by or any representation or warranty of Mortgagor or of any Guarantor, or any representative of Mortgagor or of any Guarantor, made herein or in any instrument or financial statement furnished in connection herewith, or in any guaranty, shall prove false or misleading in any material respect.

    b. Upon the occurrence of an event of default, the Mortgagee, with or without entry, personally or by its agents or attorneys or otherwise, may proceed forthwith to protect and enforce its rights under this

Mortgage and/or the other loan documents by such suits, actions or proceedings, in equity or at law, as it shall deem appropriate, including, without limitation, an action to foreclose the lien of this Mortgage, in which case the Mortgaged Property or any interest therein or any part thereof may be sold in one or more interests and in any order or manner. Moreover, the Mortgagee shall not be required to proceed hereunder before proceeding against any other security, shall not be required to proceed against any other security before proceeding hereunder, and shall not be precluded from proceeding against any or all of any security in any order or at the same time.

16. **WAIVER OF COUNTER-CLAIM.** In any action to foreclose the lien or liens of this Mortgage, including a partial foreclosure, no defense, counterclaim or set off shall be available to Mortgagor other than one which denies the existence or sufficiency of the facts upon which the action is grounded or which raises an issue concerning the priority of liens or the statute of limitations or other bar to an action based on the passage of time. If any defense, counterclaim or set off, other than one permitted by the preceding sentence, is timely raised in such foreclosure action, such defense, counterclaim or set off shall be dismissed; provided, however, if such defense, counterclaim or set off is based on a claim which could be tried in an action for money damages, such claim may be brought in a separate action which shall not thereafter be consolidated with such foreclosure action. The bringing of a separate action for money damages shall not be deemed to afford any grounds for staying the foreclosure action. Any assignee of this Mortgage and any notes or bonds secured thereby shall take the same free and clear of all offsets, counterclaims or defenses of any nature whatsoever which Mortgagor may have against any assignor hereof and no offset, counterclaim or defense shall be interposed or asserted by Mortgagor in any action or proceeding by any such assignee upon this Mortgage or the notes or bonds secured hereby, and any such right to interpose or assert any such offset, counterclaim or defense in any such action or proceeding is hereby expressly waived by Mortgagor. Notwithstanding the foregoing provisions of this paragraph, mortgagor shall not be precluded from asserting a counterclaim if failure to assert such counterclaim would bar the assertion of such claim in a separate action or proceeding would be deemed a waiver of such claim.

17. **SALE BAR.** The sale of the Mortgage Property, or any part thereof, or any interest therein, whether pursuant to foreclosure or partial foreclosure or power of sale or otherwise, under this Mortgage shall be a perpetual bar against mortgagor.

18. **ASSIGNMENT OF RENTS.**
    a. The Mortgagor hereby transfers, sells and assigns to the Mortgagee, any existing and future leases with respect to the Mortgaged Property (the "Leases") and all rents, revenues, issues and profits now due and hereafter to become due, under the terms of all Leases and other rental arrangements or any renewals or replacements thereof concerning any part or all of the mortgaged premises, all as further security for the payment of the indebtedness. The Mortgagor also assigns to the Mortgagee any award made hereafter to it in any court proceedings involving any tenant(s) under any of the Leases in any bankruptcy, insolvency or reorganization proceedings and any and all payments paid by said tenant(s) in lieu of rent.
    b. If no event of default has occurred hereunder, the Mortgagor shall have the right to collect the rents, income and profits from the Leases, to administer the Leases and to retain, use and enjoy the same; provided, however, that even if no event of default has occurred (I) no rent more than two (2) month(s) in advance shall be collected or accepted without obtaining the prior written consent of the Mortgagee; and (ii) the Leases shall not be modified or amended without the prior written consent of the Mortgagee, which shall not be unreasonably withheld or delayed.
    c. The Mortgagor represents and warrants that there are no other assignments of the Leases and that all Leases presented to the Mortgagee have not previously been amended and are in full force and effect.
    d. The rights assigned hereunder include all of the Mortgagor's right and power to modify the Leases or to terminate the term thereof or to accept a surrender thereof or to waive or release the tenant(s) thereunder from the performance or observance of any obligations or conditions or provisions thereof; provided, however, that so long as no event of default shall have occurred hereunder, the Mortgagee shall not have the right to exercise any of the aforesaid rights or powers without the prior written consent of the Mortgagor.
    e. The Mortgagee shall not be obligated to perform or discharge any obligation or duty to be performed or discharged by the Mortgagor under the Leases and the assignment of the Leases effected hereby shall not place responsibility for the control, care, management or repair of the Mortgaged Property (or any part thereof) on the Mortgagee or make the Mortgagee responsible or liable for any negligence in the management, operation, upkeep, repair or control of the Mortgaged Property. The Mortgagor hereby agrees to indemnify, to defend and to save harmless the Mortgagee and its officers, members, agents and employees from any and all liability arising from the Leases, or from this assignment of Leases, or from any and all claims and demands whatsoever that may be asserted against the Mortgagee or its officers, members, agents or employees by reason of any alleged obligations or undertakings on the part of the Mortgagee or its officers, members, agents or employees to perform or discharge any of the terms of the Leases prior to the

7



date on which the Mortgagee elects to exercise its rights as an assignee hereunder.

 f. The Mortgagor will (I) fulfill or perform every condition and covenant of the Leases by the Landlord to be fulfilled or performed; (ii) enforce, short of termination of the Leases, the performance and observance of every covenant and condition of the Leases by the tenants to be performed and observed thereunder; (iii) not terminate the Leases without the prior written consent of the Mortgagee, which shall not be unreasonably withheld or delayed, nor accept a surrender thereof, unless required to do so by the terms of the Leases; and (iv) deliver to the Mortgagee, upon written demand, a statement specifying the rents and other profits to be derived or received from the Leases for the periods specified in such demand, and true and correct copies of the Leases as they then exist.

 g. In the event of a default hereunder, the Mortgagee, at its option, without notice, either in person or by agent, with or without bringing any action of proceeding, or by a receiver to be appointed by a court may: enter upon, take possession of, and operate the Mortgaged Property; make, enforce, modify and accept the surrender of Leases; obtain and evict tenants; fix or modify rents; and do any acts which the Mortgagee deems proper to protect the security hereof until all indebtedness secured hereby is paid in full, and either with or without taking possession of the Mortgaged Property, in its own name, sue for or otherwise collect and receive all rents, issues and profits, including those past due and unpaid, and apply the same, less costs and expenses, of operation and collection, including reasonable attorneys' fees, upon any indebtedness secured hereby in such order as the Mortgagee may determine. The entering upon and taking possession of said property, the collection of such rents, issues and profits, and the application thereof as aforesaid, shall not cure or waive any default or waive, modify or affect any notice of default under this Mortgage.

 h. **Mortgagee's Limitation of Liability - Leases.** Neither this mortgage nor any action or inaction on the part of mortgagee shall, without its written consent, constitute an assumption on its part of any obligation under any lease or any other agreement affecting the premises. Nor shall mortgagee have any obligation to make any payment to be made by mortgagor under any lease on the premises, or to present or file any claim, or to take any other action to collect or enforce the payment of any amounts which have been assigned to mortgagee or to which it may be entitled hereunder at any time or times. No action or inaction on the part of mortgagee shall adversely affect or limit in any way the rights of mortgagee hereunder or under any lease on the premises.

19. **REAL PROPERTY LAW 291-f**. Without Mortgagee's consent, Mortgagor shall not, and shall not have the right or power as against the Mortgagee, to cancel, abridge or otherwise modify, or accept prepayments of installments of rent to become due under any lease of the Mortgaged Property or any part thereof not made primarily for the residential purposes of the owner of the leasehold estate and which is either now in existence and has an unexpired term of at least one year or hereafter is entered into for a term of at least one year. The Agreement contained in this paragraph has been made with reference to Section 291-f of the New York State Real Property Law.

20. **RECEIVER; SALE IN ONE PARCEL**. The holders of this Mortgage, in any action to foreclose it, shall be entitled to the appointment of a receiver of the rents and profits of the said Mortgaged Property without notice, as a matter of right, without consideration of the value of the Mortgaged Property as security for the amounts due the Mortgagee, or the solvency of any person or persons liable for the payment of such amounts. That in case of sale under foreclosure, the Mortgaged Property may be sold in one or more parcel(s) as Mortgagee may determine in its sole discretion.

21. **FEES AND EXPENSES**. All sums paid or incurred by the Mortgagee for the expenses (including reasonable attorneys' fees) of enforcing, defending or upholding the lien of this Mortgage, regardless of whether any action or proceeding has been commenced, but including any action to foreclose the Mortgage or to collect the debt secured thereby, shall be paid by the Mortgagor, together with interest thereon at the rate set forth in the Note (but in no event shall the interest rate be more than the law allows), and such sum and the interest thereon shall be a lien on the Mortgaged Property, prior to any right, or title to, interest in or claim upon said Mortgaged Property attaching or accruing subsequent to the lien of the Mortgage and shall be secured by the Mortgage. In addition to and not in limitation of the foregoing, in any action or proceeding to foreclose the Mortgage, or to recover or collect the debt secured thereby, the provisions of law respecting the recovery of costs, disbursements and allowances shall also apply. The expenses of pursuing, searching for, retaking, receiving, holding, storing, safeguarding, any environmental testing and cleanup, insuring, accounting for, advertising, preparing for sale or lease, selling, leasing and the like, plus attorneys' fees, fees for certified public accountants, fees for auctioneers, fees for brokers and/or appraisers, fees for security guards, fees for environmental auditors and engineers, fees for hazard insurance premiums, or any other costs or disbursements whatsoever incurred by or contracted for by the Mortgagee in connection with the disposition of the Mortgaged Property (including any of the foregoing incurred or contracted for by the Mortgagee in connection with any bankruptcy or insolvency proceedings involving the Mortgagor)—shall all be chargeable to Mortgagor and shall be secured by the Mortgage, and said Mortgagor will also be

responsible for any deficiency.

1. Without limiting the generality of the foregoing, if at any time the United States of America, any state thereof or any governmental subdivision of such state, having jurisdiction, shall require internal revenue stamps to be affixed to the Note, or other tax paid on or in connection therewith, Mortgagor will pay the same with any interest or penalties imposed in connection therewith. If, by reason of the additional sums that may become secured by the lien of this Mortgage pursuant to the terms hereof, a court or other governmental authority having jurisdiction at any time shall determine that this Mortgage falls within the ambit of Section 256 of the Tax Law of the State of New York, then Mortgagee reserves the right, in its sole and absolute discretion, to elect not to have such additional sums secured by this Mortgage and thereby reduce the indebtedness secured hereby to a definite amount equal to the principal amount of the Note, interest thereon at the rate provided in the Note, plus any disbursements made to protect the security of this Mortgage, with annual interest on such disbursements at the rate applicable to overdue payments under the Note (or the highest rate permitted by law, whichever shall be less), plus any such other sums as by statute or judicial interpretation now or hereafter may be permitted to be secured by the lien of a mortgage without incurring any additional mortgage recording tax. Any election by Mortgagee to so reduce the indebtedness secured hereby shall in no event be deemed a release, waiver or discharge by Mortgagee of Mortgagor's obligation to pay or reimburse Mortgagee for such sums and such obligation shall continue unimpaired and shall be recourse obligations of Mortgagor and any Guarantor of the indebtedness secured hereby, regardless of any other provisions set forth herein or in the Note or in any such guaranty that may limit recourse against Mortgagor or anyone else. It is further understood and agreed that any sums, including, without limitation, any prepayment penalties, late charges or liquidated damages, that may become due and payable pursuant to the terms of the Note and/or this Mortgage and that are in the nature of interest shall, for the purpose of determining the amount of mortgage recording tax due and payable on this Mortgage, be considered as additional interest, whether or not so denominated, and such sums shall be secured by the lien of this Mortgage to the fullest extent possible without causing this Mortgage to be covered by section 256 of the New York Tax Law, and shall not be deemed principal and shall not accrue any interest thereon.

22. **CONDEMNATION AWARDS.** The Mortgagor does hereby assign to the Mortgagee any awards heretofore made and hereafter to be made by any state, county or local authorities to the owner of the Mortgaged Property, as a result of condemnation of all or any portion of said Mortgaged Property or of the use thereof and the said Mortgagee, at its option, is hereby authorized to collect and receive the proceeds of any such awards from the authorities making the same and to give proper receipts and acquittances therefor, and to apply the same to reduction of installments due to the Mortgagee, in the inverse order of their maturity, notwithstanding the fact that no installment on account of this Mortgage may then be due and payable; and the Mortgagor, upon request by the Mortgagee, will make, execute and deliver any and all assignments and other instruments sufficient for the purpose of assigning the aforesaid awards to the Mortgagee, free, clear and discharged of any and all encumbrances of any kind or nature whatsoever.

23. **MISCELLANEOUS/NO ORAL MODIFICATION**. This Mortgage and all agreements and covenants contained herein shall bind the executors, administrators, successors and assigns of the Mortgagor and inure to the benefit of the successors and assigns of the Mortgagee, with like effect as if named herein. If more than one person or entity joins in the execution of this Mortgage, the covenants and agreements hereof shall be their joint and several obligations, and if any be masculine or feminine or under any assumed business name, the relative words herein shall be read as if written in the plural or in the masculine, feminine, or neuter gender, as the case may be, and the words "Mortgagor" and "Mortgagee" where used herein shall be construed to include their and each of their executors, administrators, successors and assigns. Captions used herein are for convenience only and shall not affect the interpretation of any provisions herein. The provisions of this instrument cannot be changed, modified or discharged unless such change, modification or discharge is in writing and signed by the party against whom enforcement of such change, modification or discharge is sought, or by its agent thereunto duly authorized in writing.

24. **NOTICES.** Any notice, demand or request pursuant to this Mortgage shall, at the option of the party so giving the notice, demand or request, be (a) sent overnight via U.S. Express Mail or Federal Express or other substantial national delivery service; or (b) delivered personally; or ©) sent via prepaid certified mail, return receipt requested, and, in each case, addressed as set forth on page one of this Mortgage, or, in the case of Mortgagor, at its most recent address as shown in the Mortgagee's records. Notice shall be deemed to have been given on the date of personal delivery or if given by overnight service or regional delivery service or by certified mail on the date of receipt as indicated by the records of the overnight or regional delivery service, or the U.S. Postal Service, as the case may be. Any change of address shall be effective if sent in accordance with this paragraph. Failure of the Mortgagor to provide notice of a change in address at least five (5) business days prior to said change shall constitute an event of default hereunder.



9

25. **CORRECTIVE DOCUMENTS /INTERPRETATION.** Mortgagor shall within five (5) business days of a request by Mortgagee re-execute any document or instrument signed in connection with this Mortgage Loan or execute any document or instrument that in Mortgagee's reasonable discretion ought to have been signed at or before the closing of the loan, or which was incorrectly drafted and/or signed. This instrument shall be interpreted without the aid of any presumption against the party drafting, or causing the drafting, of the provision in question. In the event of any conflict between any term or provision in this instrument and any other document(s) executed in connection with this transaction, and/or modification/renewals of same, the interpretation most favorable to Mortgagee shall prevail.

26. **NO RELIANCE ON MORTGAGEE; NO WAIVER.** Mortgagor affirms that it is not relying on the fact that the Mortgagee has extended this Mortgage or loan as evidence of good condition and/or good title of the Mortgaged Property. Neither failure by Mortgagee to exercise, nor delay by Mortgagee in exercising, nor any course of dealing with respect to, any right(s) hereunder, shall operate as a waiver thereof; nor shall any single or partial exercise of any right hereunder preclude either any other/further exercise thereof or the exercise of any other right. The remedies herein provided are cumulative and not exclusive of any other remedies provided by law.

27. **INVALIDITY; CHOICE OF LAW; JURISDICTION.** If any provision hereof would be invalid under applicable law, then such provision shall be deemed to be modified to the extent necessary to render it valid while most nearly preserving its original intent; no provision hereof shall be affected by another provision being held invalid. This Mortgage is being executed and delivered in the State of New York and shall be construed and enforced in accordance with the laws of the State of New York. The Mortgagor consents to the jurisdiction of the courts of the State of New York, which courts shall be the sole and exclusive forum.

28. **APPRAISALS; TAX SEARCH FEE.** Upon request by Mortgagee, Mortgagor shall agrees to provide at its sole cost and expense updated appraisals covering the Mortgaged Premises, in form satisfactory to the Mortgagee and completed by an appraiser satisfactory to the Mortgagee. At the sole option of the Mortgagee, the Mortgagee may procure said appraisal(s) and pay the cost therefor, and in such event, the Mortgagor will on demand pay to the Mortgagee such costs so paid and the same shall be deemed to be secured by this Mortgage and shall be collectible thereupon in like manner as the principal monies. Upon Mortgagee's request, Mortgagor shall pay Mortgagee such fees as may be charged by others to monitor the payment of taxes assessed against the Mortgaged Premises, and upon failure of Mortgagor to promptly remit such fees to Mortgagee, such fees may be paid by Mortgagee and shall be secured by the lien of this Mortgage.

IN WITNESS WHEREOF, Mortgagor has caused this mortgage to be duly executed and delivered all as of the day and year first above written.

249 W. 49TH STREET, LLC, Mortgagor

By: _____
Rakesh K. Aggarwal, Sole Member

State of New York, County of New York) Ss.:

On the 12th day of December in the year 2008 before me, the undersigned, a notary public in and for said state, personally appeared Rakesh K. Aggarwal, personally known to me, or proved to me on the basis of satisfactory evidence to be, the individual(s) whose name is(are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person(s) upon behalf of which the individual(s) acted, executed the instrument.

Notary Public _____

SEAL

RAJA KARAN MEHRA
Notary Public, State of New York
No. 02ME6103921
Qualified in Queens County
Commission Expires Jan. 12, 20__

Record and Return to:
Habib American Bank, Attn: Qaiser Jaffery
99 Madison Avenue, New York, NY 10016

10