# EXHIBIT C



**2012121100820003001E2416**

| NYC DEPARTMENT OF FINANCE OFFICE OF THE CITY REGISTER | |
|---|---|

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.

| RECORDING AND ENDORSEMENT COVER PAGE | | PAGE 1 OF 30 |
|---|---|---|
| **Document ID: 2012121100820003** | Document Date: 10-24-2012 | Preparation Date: 12-11-2012 |
| Document Type: AGREEMENT | | |
| Document Page Count: 28 | | |

| PRESENTER: | RETURN TO: |
|---|---|
| KENSINGTON VANGUARD | CASSIN & CASSIN LLP |
| 39 WEST 37TH STREET, TITLE NO.810772 | 711 THIRD AVENUE |
| HOLD/ PICKUP SEARCH NY | ATTENTION: RECORDING DEPARTMENT |
| NEW YORK, NY 10018 | NEW YORK, NY 10017 |
| 212-532-8686 | |
| chrisc@kvnational.com | |

| PROPERTY DATA | | | | |
|---|---|---|---|---|
| **Borough** | **Block Lot** | | **Unit** | **Address** |
| MANHATTAN | 1021 5 | Entire Lot | | 249 WEST 49TH STREET |
| **Property Type:** RETAIL BUILDING | | | | |

| CROSS REFERENCE DATA |
|---|
| **Document ID:** 2012121100820002 |
| x Additional Cross References on Continuation Page |

| PARTIES | |
|---|---|
| **PARTY 1:** | **PARTY 2:** |
| 249 W. 49TH STREET, LLC | CANTOR COMMERCIAL REAL ESTATE LENDING, L.P. |
| 167 MADISON AVENUE, SUITE 201 | |
| NEW YORK, NY 10016 | 110 EAST 59TH STREET, 6TH FLOOR |
| | NEW YORK, NY 10022 |

| FEES AND TAXES | | | | |
|---|---|---|---|---|
| **Mortgage** | | | Filing Fee: | |
| Mortgage Amount: | $ | 3,530,000.00 | $ | 0.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | |
| Exemption: | | 255 | $ | 0.00 |
| TAXES: County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | |
| City (Additional): | $ | 0.00 | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | | |
| TASF: | $ | 0.00 | RECORDED OR FILED IN THE OFFICE OF THE CITY REGISTER OF THE CITY OF NEW YORK | |
| MTA: | $ | 0.00 | | |
| NYCTA: | $ | 0.00 | Recorded/Filed 12-18-2012 14:32 | |
| Additional MRT: | $ | 0.00 | City Register File No.(CRFN): | |
| TOTAL: | $ | 0.00 | **2012000495144** | |
| Recording Fee: | $ | 177.00 | | |
| Affidavit Fee: | $ | 8.00 | | |

*City Register Official Signature*

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**



2012121100820003001C2696

| RECORDING AND ENDORSEMENT COVER PAGE (CONTINUATION) | PAGE 2 OF 30 |
|---|---|

| Document ID: 2012121100820003 | Document Date: 10-24-2012 | Preparation Date: 12-11-2012 |
|---|---|---|

Document Type: AGREEMENT

**CROSS REFERENCE DATA**
**CRFN:** 2008000492524

810772        6

**249 W. 49TH STREET, LLC**, as mortgagor
(Borrower)

to

**CANTOR COMMERCIAL REAL ESTATE LENDING, L.P.**, as mortgagee
(Lender)

**AMENDED, RESTATED AND CONSOLIDATED MORTGAGE, ASSIGNMENT OF LEASES
AND RENTS, SECURITY AGREEMENT AND FIXTURE FILING**

| | |
|---|---|
| Dated: | As of October 24, 2012 |
| Location: | 249 West 49th Street<br>New York, New York 10019 |
| Block: | 1021 |
| Lot: | 5 |
| County: | New York |

PREPARED BY AND UPON
RECORDATION RETURN TO:
CASSIN & CASSIN LLP
711 Third Avenue, 20th Floor
New York, New York 10017
Attention:  Recording Department

**THIS MORTGAGE DOES NOT ENCUMBER REAL PROPERTY PRINCIPALLY IMPROVED
OR TO BE IMPROVED BY ONE OR MORE STRUCTURES CONTAINING IN THE
AGGREGATE NOT MORE THAN SIX (6) RESIDENTIAL DWELLING UNITS HAVING
THEIR OWN SEPARATE COOKING FACILITIES.**

## AMENDED, RESTATED AND CONSOLIDATED MORTGAGE, ASSIGNMENT OF LEASES AND RENTS, SECURITY AGREEMENT AND FIXTURE FILING

This AMENDED, RESTATED AND CONSOLIDATED MORTGAGE, ASSIGNMENT OF LEASES AND RENTS, SECURITY AGREEMENT AND FIXTURE FILING (as the same may be amended, restated, replaced, supplemented or other modified, being hereinafter referred to as this "*Security Instrument*"), is made as of October *24*, 2012, by **249 W. 49TH STREET, LLC**, a New York limited liability company, having its principal place of business at 167 Madison Avenue, New York, New York 10016, as mortgagor ("*Borrower*"), for the benefit of **CANTOR COMMERCIAL REAL ESTATE LENDING, L.P.**, a Delaware limited partnership, having an address at 110 East 59th Street, 6th Floor, New York, New York 10022, as mortgagee (together with its successors and assigns, collectively, "*Lender*").

### W I T N E S S E T H :

WHEREAS, this Security Instrument is given to secure a loan (the "*Loan*") in the principal sum of **THREE MILLION FIVE HUNDRED THIRTY THOUSAND AND NO/100 DOLLARS ($3,530,000.00)** pursuant to that certain Loan Agreement dated as of the date hereof between Borrower and Lender (as the same may be amended, restated, replaced, supplemented or otherwise modified from time to time, the "*Loan Agreement*") and evidenced by that certain Amended, Restated and Consolidated Promissory Note dated the date hereof made by Borrower to Lender (such Note, together with all extensions, renewals, replacements, restatements or modifications thereof being hereinafter referred to as the "*Note*");

WHEREAS, Lender is the holder of the mortgages listed on **Schedule A** annexed hereto and made a part hereof (the "*Existing Mortgages*") and the notes (the "*Existing Notes*") secured thereby which are listed on **Schedule B** annexed hereto and made a part hereof and that there are no offsets, setoffs or counterclaims against payment of said amounts due under the Existing Notes;

WHEREAS, the Existing Notes were combined, consolidated and restated by the Note, given by Borrower to Lender simultaneously herewith in evidence of the Loan, with interest from the date hereof at the rates set forth in the Note, such interest and the principal amount thereof to be payable in accordance with the terms and conditions provided in the Note and Loan Agreement;

WHEREAS, Borrower desires to secure the payment of the Debt and the performance of all of its obligations under the Note, the Loan Agreement and the other Loan Documents; and

WHEREAS, Borrower and Lender desire (a) to combine, consolidate and modify the liens of the Existing Mortgages, so as to create solely one lien covering the Property (as hereinafter defined), and (b) to restate the terms and conditions of the Existing Mortgages in their entirety in the manner hereinafter set forth;

WHEREAS, this Security Instrument is given pursuant to the Loan Agreement, and payment, fulfillment, and performance by Borrower of its obligations thereunder and under the other Loan Documents are secured hereby, and each and every term and provision of the Loan Agreement, the Note, and that certain Assignment of Leases and Rents of even date herewith made by Borrower in favor of Lender delivered in connection with this Security Instrument (as the same may be amended, restated, replaced, supplemented or otherwise modified from time to time, the "*Assignment of Leases*"), including the rights, remedies, obligations, covenants, conditions, agreements, indemnities, representations and warranties of the parties therein, are hereby incorporated by reference herein as though set forth in full and shall be considered a part of this Security Instrument (the Loan Agreement, the Note, this Security

Instrument, the Assignment of Leases and Rents and all other documents evidencing or securing or otherwise setting out conditions, covenants, representations and/or remedies in favor of the Lender in connection with the funding of the Debt (including all additional mortgages, deeds of trust, deeds to secure debt and assignments of leases and rents) or executed or delivered in connection therewith, are hereinafter referred to collectively as the "***Loan Documents***").

**NOW THEREFORE**, in consideration of the making of the Loan and other good and valuable consideration, the receipt and legal sufficiency of which are hereby acknowledged, Borrower hereby agrees, covenants, represents and warrants with and to Lender as follows:

The Existing Mortgages are hereby consolidated, modified and restated in their entirety, and the liens of the Existing Mortgages, as so consolidated are hereby amended, modified and restated so that all of the terms and conditions contained in this Security Instrument shall supersede and control the terms and conditions of the Existing Mortgages (it being agreed that the execution of this Security Instrument shall not impair the lien created by the Existing Mortgages) and that together they shall hereafter constitute but one mortgage and one lien represented by this Security Instrument securing the amount of the Loan plus interest, and creating a single lien on the Property. Borrower hereby assumes all of the obligations and agreements of the Existing Mortgages and the notes or bonds secured thereby.

This Security Instrument does not extinguish the outstanding indebtedness evidenced by the Existing Notes or discharge or release the Existing Mortgages securing the indebtedness of the Existing Notes or any other security, and the parties do not intend this Security Instrument to be a substitution or novation of the original indebtedness or instruments securing the same.

## ARTICLE 1

## GRANTS OF SECURITY

**Section 1.1    Property Mortgaged**.  Borrower does hereby irrevocably mortgage, grant, bargain, sell, pledge, assign, warrant, transfer and convey to Lender, with power of sale for the benefit and security of Lender, all of the real, personal, tangible and intangible property, rights, interests and estates now owned, or hereafter acquired by Borrower (collectively, the "***Property***") including, without limitation, the following:

(a)    Land.  The real property, and/or leasehold interest in the real property, described in Exhibit A attached hereto and made a part hereof (the "***Land***");

(b)    Additional Land.  All additional lands, estates and development rights hereafter acquired by Borrower for use in connection with the Land and the development of the Land and all additional lands and estates therein which may, from time to time, by supplemental mortgage or otherwise, be expressly made subject to the lien of this Security Instrument;

(c)    Improvements.  The buildings, structures, fixtures, additions, enlargements, extensions, modifications, repairs, replacements and improvements now or hereafter erected or located on the Land (collectively, the "***Improvements***");

(d)    Easements.  All easements, rights-of-way or use, rights, strips and gores of land, streets, ways, alleys, passages, sewer rights, water, water courses, water rights and powers, air rights and development rights, permits, licenses, rights of way and all estates, rights, titles, interests, privileges, liberties, servitudes, tenements, hereditaments and appurtenances of any nature whatsoever, in any way now or hereafter belonging, relating or pertaining to the Land and the Improvements and the reversions

and remainders, and all land lying in the bed of any street, road or avenue, opened or proposed, in front of or adjoining the Land, to the center line thereof and all the estates, rights, titles, interests, dower and rights of dower, curtesy and rights of curtesy, property, possession, claim and demand whatsoever, both at law and in equity, of Borrower of, in and to the Land and the Improvements and every part and parcel thereof, with the appurtenances thereto;

(e)     Equipment.  All "equipment," as such term is defined in Article 9 of the Uniform Commercial Code (as hereinafter defined), now owned or hereafter acquired by Borrower, which is used at or in connection with the Improvements or the Land or is located thereon or therein (including, but not limited to, all machinery, equipment, heating, ventilation or air conditioning equipment, garbage equipment and apparatus, incinerators, boilers, furnaces, motors, furnishings, and electronic data-processing and other office equipment now owned or hereafter acquired by Borrower and any and all additions, substitutions and replacements of any of the foregoing), together with all attachments, components, parts, equipment and accessories installed thereon or affixed thereto (collectively, the "*Equipment*").  Notwithstanding the foregoing, Equipment shall not include any property belonging to tenants under leases except to the extent that Borrower shall have any right or interest therein;

(f)     Fixtures.  All Equipment now owned, or the ownership of which is hereafter acquired, by Borrower which is so related to the Land and Improvements forming part of the Property that it is deemed fixtures or real property under the law of the particular state in which the Equipment is located, including, without limitation, all building or construction materials intended for construction, reconstruction, alteration or repair of or installation on the Property, construction equipment, appliances, machinery, plant equipment, fittings, apparatuses, fixtures and other items now or hereafter attached to, installed in or used in connection with (temporarily or permanently) any of the Improvements or the Land, including, but not limited to, engines, devices for the operation of pumps, pipes, plumbing, cleaning, call and sprinkler systems, fire extinguishing apparatuses and equipment, heating, ventilating, plumbing, laundry, incinerating, electrical, air conditioning and air cooling equipment and systems, gas and electric machinery, appurtenances and equipment, pollution control equipment, security systems, disposals, dishwashers, refrigerators and ranges, recreational equipment and facilities of all kinds, and water, gas, electrical, storm and sanitary sewer facilities, utility lines and equipment (whether owned individually or jointly with others, and, if owned jointly, to the extent of Borrower's interest therein) and all other utilities whether or not situated in easements, all water tanks, water supply, water power sites, fuel stations, fuel tanks, fuel supply, and all other structures, together with all accessions, appurtenances, additions, replacements, betterments and substitutions for any of the foregoing and the proceeds thereof (collectively, the "*Fixtures*").  Notwithstanding the foregoing, "Fixtures" shall not include any property which tenants are entitled to remove pursuant to leases, except to the extent that Borrower shall have any right or interest therein;

(g)     Personal Property.  All furniture, furnishings, objects of art, machinery, goods, tools, supplies, appliances, general intangibles, contract rights, accounts, accounts receivable, franchises, licenses, certificates and permits, and all other personal property of any kind or character whatsoever as defined in and subject to the provisions of the Uniform Commercial Code, whether tangible or intangible, other than Fixtures, which are now or hereafter owned by Borrower, together with all accessories, replacements and substitutions thereto or therefor and the proceeds thereof (collectively, the "*Personal Property*"), and the right, title and interest of Borrower in and to any of the Personal Property which may be subject to any security interests, as defined in the Uniform Commercial Code, as adopted and enacted by the state or states where any of the Property is located (as amended from time to time, the "*Uniform Commercial Code*"), superior in lien to the lien of this Security Instrument and all proceeds and products of the above;

(h)    Leases and Rents.    All leases (including, without limitation, ground leases, subleases or subsubleases), lettings, licenses, concessions or other agreements (whether written or oral) pursuant to which any Person is granted a possessory interest in, or right to use or occupy all or any portion of the Land and the Improvements, and every modification, amendment or other agreement relating to such leases, subleases, subsubleases, or other agreements entered into in connection with such leases, subleases, subsubleases, or other agreements and every guarantee of the performance and observance of the covenants, conditions and agreements to be performed and observed by the other party thereto, heretofore or hereafter entered into (collectively, the "*Leases*"), whether before or after the filing by or against Borrower of any petition for relief under 11 U.S.C. §101 *et seq.*, as the same may be amended from time to time (the "*Bankruptcy Code*") and all right, title and interest of Borrower, its successors and assigns therein and thereunder, including, without limitation, cash or securities deposited thereunder to secure the performance by the lessees of their obligations thereunder and all rents, rent equivalents, moneys payable as damages or in lieu of rent or rent equivalents, additional rents, revenues, issues and profits (including all oil and gas or other mineral royalties and bonuses), income, fees, receivables, deposits (including, without limitation, security, utility and other deposits) accounts and receipts from the Land and the Improvements whether paid or accruing before or after the filing by or against Borrower of any petition for relief under the Bankruptcy Code (collectively, the "*Rents*") and all proceeds from the sale or other disposition of the Leases and the right to receive and apply the Rents to the payment of the Debt and the performance of the Other Obligations;

(i)    Condemnation Awards.    All Awards or payments, including interest thereon, which may heretofore and hereafter be made with respect to all or any portion of the Property, whether from the exercise of the right of eminent domain (including, but not limited to, any transfer made in lieu of or in anticipation of the exercise of such right), or for a change of grade, or for any other injury to or decrease in the value of the Property including, without limitation, any award or awards, or settlements or payments, hereafter made resulting from (i) condemnation proceedings or the taking of all or any portion of the Improvements, the Equipment, the Fixtures, the Leases or the Personal Property, or any part thereof, under the power of eminent domain; or (ii) the alteration of grade or the location or the discontinuance of any street adjoining the Property or any portion thereof; and Borrower hereby agrees to execute and deliver from time to time such further instruments as may be requested by Lender to confirm such assignment to Lender of any such award, damage, payment or other compensation;

(j)    Insurance Proceeds.    All Insurance Proceeds in respect of the Property under any Policies covering the Property, including, without limitation, the right to receive and apply the proceeds of any Policies, judgments, or settlements made in lieu thereof, in connection with a Casualty to the Property;

(k)    Tax Certiorari.    All refunds, rebates or credits in connection with any reduction in Taxes or Other Charges charged against the Property;

(l)    Conversion.    All proceeds of the conversion, voluntary or involuntary, of any of the foregoing including, without limitation, Insurance Proceeds and Awards, into cash or liquidation claims;

(m)    Rights.    The right, in the name and on behalf of Borrower, to appear in and defend any action or proceeding brought with respect to the Property and to commence any action or proceeding to protect the interest of Lender in the Property;

(n)    Agreements.    All agreements, contracts, certificates, instruments, franchises, permits, licenses, plans, specifications and other documents, now or hereafter entered into, and all rights therein and thereto, respecting or pertaining to the use, occupation, construction, management or

{00704328;4}

5

operation of the Land and any part thereof and any Improvements or any business or activity conducted on the Land and any part thereof and all right, title and interest of Borrower therein and thereunder, including, without limitation, the right, upon the happening of any default hereunder, to receive and collect any sums payable to Borrower thereunder;

(o)    Trademarks.  All trade names, trademarks, servicemarks, logos, copyrights, goodwill, books and records and all other general intangibles relating to or used in connection with the operation of the Property;

(p)    Accounts.  All reserves, escrows and deposit accounts maintained by Borrower with respect to the Property, including, without limitation, all accounts established or maintained pursuant to the Loan Agreement, the Clearing Account Agreement or the Cash Management Agreement; together with all deposits or wire transfers made to such accounts and all cash, checks, drafts, certificates, securities, investment property, financial assets, instruments and other property held therein from time to time and all proceeds, products, distributions or dividends or substitutions thereon and thereof; and

(q)    Other Rights.  Any and all other rights of Borrower in and to the items set forth in Subsections (a) through (p) above.

AND without limiting any of the other provisions of this Security Instrument, to the extent permitted by applicable law, Borrower expressly grants to Lender, as secured party, a security interest in the portion of the Property which is or may be subject to the provisions of the Uniform Commercial Code which are applicable to secured transactions; it being understood and agreed that the Improvements and Fixtures are part and parcel of the Land (the Land, the Improvements and the Fixtures collectively referred to as the "*Real Property*") appropriated to the use thereof and, whether affixed or annexed to the Real Property or not, shall for the purposes of this Security Instrument be deemed conclusively to be real estate and mortgaged hereby.

**Section 1.2    Assignment of Rents**.  Borrower hereby absolutely and unconditionally assigns to Lender all of Borrower's right, title and interest in and to all current and future Leases and Rents; it being intended by Borrower that this assignment constitutes a present, absolute assignment and not an assignment for additional security only.  Nevertheless, subject to the terms of the Assignment of Leases, the Loan Agreement, the Clearing Account Agreement, the Cash Management Agreement and Section 7.1(ii)(h) of this Security Instrument, Lender grants to Borrower a revocable license to collect, receive, use and enjoy the Rents and exercise all of the rights of Borrower, as landlord, under the Leases and as beneficiary under the guarantees in respect of the Leases and Borrower shall hold the Rents, or a portion thereof sufficient to discharge all current sums due on the Debt, for use in the payment of such sums.

**Section 1.3    Security Agreement**.  This Security Instrument is both a real property mortgage and a "security agreement" within the meaning of the Uniform Commercial Code.  The Property includes both real and personal property and all other rights and interests, whether tangible or intangible in nature, of Borrower in the Property including all accounts established by Lender pursuant to the Loan Agreement or Cash Management Agreement.  By executing and delivering this Security Instrument, Borrower hereby grants to Lender, as security for the Obligations (hereinafter defined), a security interest in the Fixtures, the Equipment, the Personal Property and the other property constituting the Property to the full extent that the Fixtures, the Equipment, the Personal Property and such other property may be subject to the Uniform Commercial Code (said portion of the Property so subject to the Uniform Commercial Code being called the "*Collateral*").  If an Event of Default shall occur and be continuing, Lender, in addition to any other rights and remedies which it may have, shall have and may exercise immediately and without demand, any and all rights and remedies granted to a secured party upon default under the Uniform Commercial Code, including, without limiting the generality of the foregoing, the right to take possession

of the Collateral or any part thereof, and to take such other measures as Lender may deem necessary for the care, protection and preservation of the Collateral.  Upon request or demand of Lender after the occurrence and during the continuance of an Event of Default, Borrower shall, at its expense, assemble the Collateral and make it available to Lender at a convenient place (at the Land if tangible property) reasonably acceptable to Lender.  Borrower shall pay to Lender on demand any and all expenses, including reasonable legal expenses and attorneys' fees and costs, incurred or paid by Lender in protecting its interest in the Collateral and in enforcing its rights hereunder with respect to the Collateral after the occurrence and during the continuance of an Event of Default.  Any notice of sale, disposition or other intended action by Lender with respect to the Collateral sent to Borrower in accordance with the provisions hereof at least ten (10) Business Days prior to such action, shall, except as otherwise provided by applicable law, constitute reasonable notice to Borrower.  The proceeds of any disposition of the Collateral, or any part thereof, may, except as otherwise required by applicable law, be applied by Lender to the payment of the Debt in such priority and proportions as Lender in its discretion shall deem proper.  Borrower's (debtor's) principal place of business is as set forth on the first page hereof and the address of Lender (secured party) is as set forth on the first page hereof.

       **Section 1.4**    **Fixture Filing**.  Certain of the Property is or will become "fixtures" (as that term is defined in the Uniform Commercial Code) on the Land, and this Security Instrument, upon being filed for record in the real estate records of the city or county wherein such fixtures are situated, shall operate also as a financing statement (naming Borrower as the Debtor and Lender as the Secured Party) filed as a fixture filing in accordance with the applicable provisions of said Uniform Commercial Code upon such of the Property that is or may become fixtures.

       **Section 1.5**    **Pledges of Monies Held**.  Borrower hereby pledges to Lender and grants to Lender a security interest in all of Borrower's right, title and interest in and to any and all monies now or hereafter held by Lender or on behalf of Lender in connection with the Loan, including, without limitation, any sums deposited in the Lockbox Account, the Cash Management Account, the Reserve Funds and Net Proceeds, as additional security for the Obligations until expended or applied as provided in this Security Instrument.

## CONDITIONS TO GRANT

       TO HAVE AND TO HOLD the above granted and described Property unto and to the use and benefit of Lender and its successors and assigns, forever;

       WITH POWER OF SALE, to secure Borrower's payment to Lender of the Debt and performance of the Other Obligations at the time and in the manner provided in the Note, the Loan Agreement and this Security Instrument.

       PROVIDED, HOWEVER, these presents are upon the express condition that, if Borrower shall well and truly (a) pay to Lender the Debt at the time and in the manner provided in the Note, the Loan Agreement, this Security Instrument and the other Loan Documents, (b) perform the Other Obligations as set forth in the Loan Agreement, this Security Instrument and the other Loan Documents, and (c) abide by and comply with each and every covenant and condition set forth herein and in the Note, the Loan Agreement, this Security Instrument and the other Loan Documents, these presents and the estate hereby granted shall cease, terminate and be void; provided, however, that Borrower's obligation to indemnify and hold harmless Lender pursuant to the provisions of the Loan Documents shall survive any such payment or release.

## ARTICLE 2

### DEBT AND OBLIGATIONS SECURED

**Section 2.1** **Debt**. This Security Instrument and the grants, assignments and transfers made in Article 1 hereof are given for the purpose of securing the Debt.

**Section 2.2** **Other Obligations**. This Security Instrument and the grants, assignments and transfers made in Article 1 hereof are also given for the purpose of securing the following (the "*Other Obligations*"):

      (a)    the performance of all other obligations of Borrower contained herein;

      (b)    the performance of each obligation of Borrower contained in the Note, the Loan Agreement and any other Loan Document; and

      (c)    the performance of each obligation of Borrower contained in any renewal, extension, amendment, modification, consolidation, change of, or substitution or replacement for, all or any part of the Note, the Loan Agreement or any other Loan Document.

**Section 2.3** **Debt and Other Obligations**. Borrower's obligations for the payment of the Debt and the performance of the Other Obligations shall be referred to collectively herein as the "*Obligations*."

## ARTICLE 3

### BORROWER COVENANTS

Borrower covenants and agrees that:

**Section 3.1** **Payment of Debt**. Borrower will pay the Debt at the time and in the manner provided in the Loan Agreement, the Note and this Security Instrument.

**Section 3.2** **Incorporation by Reference**. All the covenants, conditions and agreements contained in (a) the Loan Agreement, (b) the Note and (c) all and any of the other Loan Documents, are hereby made a part of this Security Instrument to the same extent and with the same force as if fully set forth herein.

**Section 3.3** **Insurance**. Borrower shall obtain and maintain, or cause to be maintained, in full force and effect at all times insurance with respect to Borrower and the Property as required pursuant to the Loan Agreement.

**Section 3.4** **Maintenance of Property**. Borrower shall cause the Property to be maintained in a good and safe condition and repair. The Improvements, the Fixtures, the Equipment and the Personal Property shall not be removed, demolished or materially altered (except for normal replacement of the Fixtures, the Equipment or the Personal Property, tenant finish and refurbishment of the Improvements) without the consent of Lender or as otherwise permitted pursuant to the Loan Agreement. Borrower shall promptly repair, replace or rebuild any part of the Property which may be destroyed by any Casualty or become damaged, worn or dilapidated or which may be affected by any Condemnation, and shall complete and pay for any structure at any time in the process of construction or repair on the Land, all in accordance with the terms of the Loan Agreement.

**Section 3.5**      **Waste**.  Borrower shall not commit or suffer any waste of the Property or make any change in the use of the Property which will in any way materially increase the risk of fire or other hazard arising out of the operation of the Property, or take any action that might invalidate or allow the cancellation of any Policy, or do or permit to be done thereon anything that may in any way materially impair the value of the Property or the security of this Security Instrument.  Borrower will not, without the prior written consent of Lender, permit any drilling or exploration for or extraction, removal, or production of any minerals from the surface or the subsurface of the Land, regardless of the depth thereof or the method of mining or extraction thereof.

**Section 3.6**      **Payment for Labor and Materials**.

(a)      Subject to <u>Section 3.6(b)</u> hereof, Borrower (i) will promptly pay when due all bills and costs for labor, materials, and specifically fabricated materials ("**_Labor and Material Costs_**") incurred in connection with the Property, (ii) never permit to exist beyond the due date thereof in respect of the Property, or any part thereof, any Lien or security interest, even though inferior to the Liens and security interests created hereby and by the other Loan Documents, and (iii) never permit to be created or exist in respect of the Property or any part thereof any other or additional Lien or security interest other than the Liens or security interests created hereby and by the other Loan Documents except for the Permitted Encumbrances.

(b)      After prior written notice to Lender, Borrower, at its own expense, may contest by appropriate legal proceeding, promptly initiated and conducted in good faith and with due diligence, the amount or validity or application in whole or in part of any of the Labor and Material Costs, provided that (i) no Event of Default has occurred and is continuing under the Loan Agreement, the Note, this Security Instrument or any of the other Loan Documents, (ii) Borrower is permitted to do so under the provisions of any other mortgage, deed of trust or deed to secure debt affecting the Property, (iii) such proceeding shall suspend the collection of the Labor and Material Costs from Borrower and from the Property or Borrower shall have paid all of the Labor and Material Costs under protest, (iv) such proceeding shall be permitted under and be conducted in accordance with the provisions of any other instrument to which Borrower is subject and shall not constitute a default thereunder, (v) neither the Property nor any part thereof or interest therein will be in danger of being sold, forfeited, terminated, canceled or lost, and (vi) Borrower shall have furnished the security as may be required in the proceeding, or as may be reasonably requested by Lender, to insure the payment of any contested Labor and Material Costs, together with all interest and penalties thereon.

**Section 3.7**      **Performance of Other Agreements**.  Borrower shall observe and perform each and every term, covenant and provision to be observed or performed by Borrower pursuant to the Loan Agreement, any other Loan Document and any other agreement or recorded instrument affecting or pertaining to the Property and any amendments, modifications or changes thereto.

**Section 3.8**      **Change of Name, Identity or Structure**.  Borrower shall not change Borrower's name, identity (including its trade name or names) or, if not an individual, Borrower's corporate, partnership or other structure without notifying Lender of such change in writing at least thirty (30) days prior to the effective date of such change and, in the case of a change in Borrower's structure, without first obtaining the prior written consent of Lender.  Borrower shall execute and deliver to Lender, prior to or contemporaneously with the effective date of any such change, any financing statement or financing statement change required by Lender to establish or maintain the validity, perfection and priority of the security interests granted herein.  At the request of Lender from time to time, Borrower shall execute a certificate in form satisfactory to Lender listing the trade names under which Borrower is operating or intends to operate the Property, and representing and warranting that Borrower does business under no other trade name with respect to the Property.

## ARTICLE 4

## OBLIGATIONS AND RELIANCES

**Section 4.1**     **Relationship of Borrower and Lender**.  The relationship between Borrower and Lender is solely that of debtor and creditor, and Lender has no fiduciary or other special relationship with Borrower, and no term or condition of the Loan Agreement, the Note, this Security Instrument or any other Loan Document shall be construed so as to deem the relationship between Borrower and Lender to be other than that of debtor and creditor.

**Section 4.2**     **No Reliance on Lender**.  The general partners, members, principals and (if Borrower is a trust) beneficial owners of Borrower, as applicable, are experienced in the ownership and operation of properties similar to the Property, and Borrower and Lender are relying solely upon such expertise and business plan in connection with the ownership and operation of the Property.  Borrower is not relying on Lender's expertise, business acumen or advice in connection with the Property.

**Section 4.3**     **No Lender Obligations**.

          (a)     Notwithstanding the provisions of Subsections 1.1(h) and (n) or Section 1.2 hereof, Lender is not undertaking the performance of (i) any obligations under the Leases, or (ii) any obligations with respect to any other agreements, contracts, certificates, instruments, franchises, permits, trademarks, licenses or other documents.

          (b)     By accepting or approving anything required to be observed, performed or fulfilled or to be given to Lender pursuant to this Security Instrument, the Loan Agreement, the Note or the other Loan Documents, including, without limitation, any Officer's Certificate, balance sheet, statement of profit and loss or other financial statement, survey, appraisal, or Policy, Lender shall not be deemed to have warranted, consented to, or affirmed the sufficiency, the legality or effectiveness of same, and such acceptance or approval thereof shall not constitute any warranty or affirmation with respect thereto by Lender.

**Section 4.4**     **Reliance**.  Borrower recognizes and acknowledges that in accepting the Loan Agreement, the Note, this Security Instrument and the other Loan Documents, Lender is expressly and primarily relying on the truth and accuracy of the warranties and representations set forth in Section 4.1 of the Loan Agreement without any obligation to investigate the Property and notwithstanding any investigation of the Property by Lender; that such reliance existed on the part of Lender prior to the date hereof, that the warranties and representations are a material inducement to Lender in making the Loan; and that Lender would not be willing to make the Loan and accept this Security Instrument in the absence of the warranties and representations as set forth in Section 4.1 of the Loan Agreement.

## ARTICLE 5

## FURTHER ASSURANCES

**Section 5.1**     **Recording of Security Instrument, etc**.  Borrower forthwith upon the execution and delivery of this Security Instrument and thereafter, from time to time, will cause this Security Instrument and any of the other Loan Documents creating a Lien or security interest or evidencing the Lien hereof upon the Property and each instrument of further assurance to be filed, registered or recorded in such manner and in such places as may be required by any present or future law in order to publish notice of and to fully protect and perfect the Lien or security interest hereof upon, and the interest of Lender in, the Property.  Borrower will pay all taxes, filing, registration or recording fees, and all

expenses incident to the preparation, execution, acknowledgment and/or recording of the Note, this Security Instrument, the other Loan Documents, any note, deed of trust or mortgage supplemental hereto, any other security instrument with respect to the Property and any instrument of further assurance, and any modification or amendment of the foregoing documents, and all federal, state, county and municipal taxes, duties, imposts, assessments and charges arising out of or in connection with the execution and delivery of this Security Instrument, any deed of trust or mortgage supplemental hereto, any other security instrument with respect to the Property or any instrument of further assurance, and any modification or amendment of the foregoing documents, except where prohibited by law so to do.

Section 5.2    **Further Acts, etc**.  Borrower will, at the cost of Borrower, and without expense to Lender, do, execute, acknowledge and deliver all and every such further acts, deeds, conveyances, deeds of trust, mortgages, assignments, notices of assignments, transfers and assurances as Lender shall, from time to time, reasonably require, for the better assuring, conveying, assigning, transferring, and confirming unto Lender the property and rights hereby mortgaged, deeded, granted, bargained, sold, conveyed, confirmed, pledged, assigned, warranted and transferred or intended now or hereafter so to be, or which Borrower may be or may hereafter become bound to convey or assign to Lender, or for carrying out the intention or facilitating the performance of the terms of this Security Instrument or for filing, registering or recording this Security Instrument, or for complying with all Legal Requirements. Borrower, on demand, will execute and deliver, and in the event it shall fail to so execute and deliver, hereby authorizes Lender to execute in the name of Borrower or without the signature of Borrower to the extent Lender may lawfully do so, one or more financing statements to evidence more effectively the security interest of Lender in the Property.  Borrower grants to Lender an irrevocable power of attorney coupled with an interest for the purpose of exercising and perfecting any and all rights and remedies available to Lender at law and in equity, including, without limitation, such rights and remedies available to Lender pursuant to this Section 5.2.

Section 5.3    **Severing of Mortgage**.  This Security Instrument and the Note may, at any time until the same shall be fully paid and satisfied, at the sole election of Lender, be severed into two or more notes and two or more security instruments in such denominations as Lender shall determine in its sole discretion, each of which shall cover all or a portion of the Property to be more particularly described therein.  To that end, Borrower or any successor to Borrower permitted by Lender, upon written request of Lender, shall execute, acknowledge and deliver, to Lender and/or its designee or designees, substitute notes and security instruments in such principal amounts, aggregating not more than the then unpaid principal amount of the Note, and containing terms, provisions and clauses similar to those contained herein and in the Note, and such other documents and instruments as may be required by Lender.

Section 5.4    **Replacement Documents**.  Upon receipt of an affidavit of an officer of Lender as to the loss, theft, destruction or mutilation of the Note or any other Loan Document which is not of public record, and, in the case of any such mutilation, upon surrender and cancellation of such Note or a replacement of such other Loan Document, Borrower will issue, in lieu thereof, a replacement Note or other Loan Document, dated the date of such lost, stolen, destroyed or mutilated Note or other Loan Document in the same principal amount thereof and otherwise of like tenor.

Section 5.5    <u>**Changes in Tax, Debt, Credit and Documentary Stamp Laws.**</u>

(a)    If any law is enacted or adopted or amended after the date of this Security Instrument which deducts the Debt from the value of the Property for the purpose of taxation or which imposes a tax, either directly or indirectly, on the Debt or Lender's interest in the Property, Borrower will pay the tax, with interest and penalties thereon, if any.  If Lender is advised by counsel chosen by it that the payment of tax by Borrower would be unlawful or taxable to Lender, unenforceable or provide the basis for a

defense of usury, then Lender shall have the option, by written notice of not less than one hundred twenty (120) days, to declare the Debt immediately due and payable.

(b)     Borrower will not claim or demand or be entitled to any credit or credits on account of the Debt for any part of the Taxes or Other Charges assessed against the Property, or any part thereof, and no deduction shall otherwise be made or claimed from the assessed value of the Property, or any part thereof, for real estate tax purposes by reason of this Security Instrument or the Debt. If such claim, credit or deduction shall be required by law, Lender shall have the option, by written notice of not less than one hundred twenty (120) days, to declare the Debt immediately due and payable.

(c)     If at any time the United States of America, any State thereof or any subdivision of any such State shall require revenue or other stamps to be affixed to the Note, this Security Instrument, or any of the other Loan Documents, or shall impose any other tax or charge on the same, Borrower will pay for the same, with interest and penalties thereon, if any.

## ARTICLE 6

### DUE ON SALE/TRANSFER

**Section 6.1      Lender Reliance**. Borrower acknowledges that Lender has examined and relied on the experience of Borrower and its general partners, members, principals and (if Borrower is a trust) beneficial owners in owning and operating properties such as the Property in agreeing to make the Loan, and will continue to rely on Borrower's ownership of the Property as a means of maintaining the value of the Property as security for the repayment of the Debt and the performance of the Other Obligations. Borrower acknowledges that Lender has a valid interest in maintaining the value of the Property so as to ensure that, should Borrower default in the repayment of the Debt or the performance of the Other Obligations, Lender can recover the Debt by a sale of the Property.

**Section 6.2      No Sale/Transfer**. Neither Borrower nor any Restricted Party shall Transfer the Property or any part thereof or any interest therein, or permit or suffer the Property or any part thereof or any interest therein to be Transferred, other than as expressly permitted pursuant to the terms of the Loan Agreement.

## ARTICLE 7

### DEFAULT AND RIGHTS AND REMEDIES UPON DEFAULT

**Section 7.1      Default and Remedies**. (i) In the event Borrower fails to comply with any term or provision or breaches any representation or warranty set forth herein or in any of the other Loan Documents such failure shall constitute a default hereunder and any default or Event of Default under any of the other Loan Documents (including, without limitation the Events of Default set forth in Article VIII of the Loan Agreement) shall constitute a default hereunder (collectively, an "*Event of Default*"). Borrower hereby expressly agrees that all of the Events of Default set forth in Article VIII of the Loan Agreement are hereby incorporated herein by reference and the occurrence of an Event of Default under the Loan Agreement shall constitute an Event of Default hereunder; and

(ii)     Upon the occurrence and during the continuance of any Event of Default, Borrower agrees that Lender may take such action, without notice or demand, to the fullest extent permitted by law, as it deems advisable to protect and enforce its rights against Borrower and in and to the Property, including, but not limited to, the following actions, each of which may be pursued concurrently or

otherwise, at such time and in such order as Lender may determine, in its sole discretion, without impairing or otherwise affecting the other rights and remedies of Lender:

        (a)     declare the entire unpaid Debt to be immediately due and payable;

        (b)     institute proceedings, judicial or otherwise, for the complete foreclosure of this Security Instrument under any applicable provision of law, in which case the Property, or any interest therein, may be sold for cash or upon credit in one or more parcels or in several interests or portions and in any order or manner;

        (c)     with or without entry, to the extent permitted and pursuant to the procedures provided by applicable law, institute proceedings for the partial foreclosure of this Security Instrument for the portion of the Debt then due and payable, subject to the continuing Lien and security interest of this Security Instrument for the balance of the Debt and the Other Obligations not then due, unimpaired and without loss of priority;

        (d)     sell for cash or upon credit the Property or any part thereof and all estate, claim, demand, right, title and interest of Borrower therein and rights of redemption thereof, pursuant to power of sale or otherwise, at one or more sales, as an entirety or in parcels, at such time and place, upon such terms and after such notice thereof as may be required or permitted by law; and, without limiting the foregoing:

        (i)     in connection with any sale or sales hereunder, Lender shall be entitled to elect to treat any of the Property which consists of (x) a right in action, or (y) property that can be severed from the Real Property covered hereby, or (z) any improvements (without causing structural damage thereto), as if the same were personal property, and dispose of the same in accordance with applicable law, separate and apart from the sale of the Real Property. Where the Property consists of Real Property, Personal Property, Equipment or Fixtures, whether or not such Personal Property or Equipment is located on or within the Real Property, Lender shall be entitled to elect to exercise its rights and remedies against any or all of the Real Property, Personal Property, Equipment and Fixtures in such order and manner as is now or hereafter permitted by applicable law;

        (ii)     Lender shall be entitled to elect to proceed against any or all of the Real Property, Personal Property, Equipment and Fixtures in any manner permitted under applicable law; and if Lender so elects pursuant to applicable law, the power of sale herein granted shall be exercisable with respect to all or any of the Real Property, Personal Property, Equipment and Fixtures covered hereby, as designated by Lender;

        (iii)     should Lender elect to sell any portion of the Property which is Real Property or which is Personal Property, Equipment or Fixtures that the Lender has elected under applicable law to sell together with Real Property in accordance with the laws governing a sale of the Real Property, Lender shall give such notice of the occurrence of an Event of Default, if any, and its election to sell such Property as may then be required by law. Thereafter, upon the giving of such notice of sale and the expiration of any required time period as may then be required by law, subject to the terms hereof and of the other Loan Documents, and without the necessity of any demand on Borrower or Lender at the time and place specified in the notice of sale, shall sell such Real Property or part thereof at public auction to the highest bidder for cash in lawful money of the United States. Lender may from time to time postpone any sale hereunder by public announcement thereof at the time and place noticed for any such sale; and

(iv)    if the Property consists of several lots, parcels or items of property, Lender shall, subject to applicable law, (A) designate the order in which such lots, parcels or items shall be offered for sale or sold, or (B) elect to sell such lots, parcels or items through a single sale, or through two or more successive sales, or in any other manner Lender designates.  Any Person, including Borrower or Lender, may purchase at any sale hereunder.  Should Lender desire that more than one sale or other disposition of the Property be conducted, Lender shall, subject to applicable law, cause such sales or dispositions to be conducted simultaneously, or successively, on the same day, or at such different days or times and in such order as Lender may designate, and no such sale shall terminate or otherwise affect the lien of this Security Instrument on any part of the Property not sold until all the Obligations have been satisfied in full.  In the event Lender elects to dispose of the Property through more than one sale, except as otherwise provided by applicable law, Borrower agrees to pay the costs and expenses of each such sale and of any judicial proceedings wherein such sale may be made;

(e)    institute an action, suit or proceeding in equity for the specific performance of any covenant, condition or agreement contained herein, in the Note, in the Loan Agreement or in the other Loan Documents;

(f)    recover judgment on the Note either before, during or after any proceedings for the enforcement of this Security Instrument or the other Loan Documents;

(g)    apply for the appointment of a receiver, trustee, liquidator or conservator of the Property, without notice and without regard for the adequacy of the security for the Debt and without regard for the solvency of Borrower, any guarantor or indemnitor with respect to the Loan or any Person otherwise liable for the payment of the Debt or any part thereof;

(h)    the license granted to Borrower under Section 1.2 hereof shall automatically be revoked and Lender may enter into or upon the Property, either personally or by its agents, nominees or attorneys, and dispossess Borrower and its agents and servants therefrom, without liability for trespass, damages or otherwise, and exclude Borrower and its agents or servants wholly therefrom, and take possession of all books, records and accounts relating thereto and Borrower agrees to surrender possession of the Property and of such books, records and accounts to Lender upon demand, and thereupon Lender may (i) use, operate, manage, control, insure, maintain, repair, restore and otherwise deal with all and every part of the Property and conduct the business thereat, (ii) complete any construction on the Property in such manner and form as Lender deems advisable, (iii) make alterations, additions, renewals, replacements and improvements to or on the Property, (iv) exercise all rights and powers of Borrower with respect to the Property, whether in the name of Borrower or otherwise, including, without limitation, the right to make, cancel, enforce or modify Leases, obtain and evict tenants, and demand, sue for, collect and receive all Rents of the Property and every part thereof, (v) require Borrower to pay monthly in advance to Lender, or any receiver appointed to collect the Rents, the fair and reasonable rental value for the use and occupation of such part of the Property as may be occupied by Borrower, (vi) require Borrower to vacate and surrender possession of the Property to Lender or to such receiver and, in default thereof, Borrower may be evicted by summary proceedings or otherwise, and (vii) apply the receipts from the Property to the payment of the Debt and the performance of the Other Obligations, in such order, priority and proportions as Lender shall deem appropriate in its sole discretion after deducting therefrom all expenses (including reasonable attorneys' fees and costs) incurred in connection with the aforesaid operations and all amounts necessary to pay the Taxes, Other Charges, Insurance Premiums and other expenses in connection with the Property, as well as just and reasonable compensation for the services of Lender, its counsel, agents and employees;

(i)     exercise any and all rights and remedies granted to a secured party upon default under the Uniform Commercial Code, including, without limiting the generality of the foregoing: (i) the right to take possession of the Fixtures, the Equipment and/or the Personal Property or any part thereof, and to take such other measures as Lender may deem necessary for the care, protection and preservation of the Fixtures, the Equipment and/or the Personal Property; and (ii) request Borrower at its expense to assemble the Fixtures, the Equipment and/or the Personal Property and make it available to Lender at a convenient place acceptable to Lender.  Any notice of sale, disposition or other intended action by Lender with respect to the Fixtures, the Equipment and/or the Personal Property sent to Borrower in accordance with the provisions hereof at least five (5) days prior to such action, shall constitute commercially reasonable notice to Borrower;

(j)     apply any sums then deposited or held in escrow or otherwise by or on behalf of Lender in accordance with the terms of the Loan Agreement, this Security Instrument or any other Loan Document to the payment of the following items in any order in its sole discretion:

(i)     Taxes and Other Charges;

(ii)    Insurance Premiums;

(iii)   Interest on the unpaid principal balance of the Note;

(iv)    Amortization of the unpaid principal balance of the Note; and/or

(v)     All other sums payable pursuant to the Note, the Loan Agreement, this Security Instrument and the other Loan Documents, including, without limitation, the Yield Maintenance Fee, if applicable, and advances made by Lender pursuant to the terms of this Security Instrument;

(k)     pursue such other remedies as Lender may have under applicable law; or

(l)     apply the undisbursed balance of any Net Proceeds Deficiency deposit, together with interest thereon, to the payment of the Debt in such order, priority and proportions as Lender shall deem to be appropriate in its sole and absolute discretion.

In the event of a sale, by foreclosure, power of sale or otherwise, of less than all of the Property, this Security Instrument shall continue as a Lien and security interest on the remaining portion of the Property unimpaired and without loss of priority.

**Section 7.2     Application of Proceeds**.  The purchase money, proceeds and avails of any disposition of the Property, or any part thereof, or any other sums collected by Lender pursuant to the Note, this Security Instrument or the other Loan Documents, may be applied by Lender to the payment of the Debt in such priority and proportions as Lender in its discretion shall deem proper.

**Section 7.3     Right to Cure Defaults**.  Upon the occurrence and during the continuance of any Default or Event of Default, Lender may, but without any obligation to do so and without notice to or demand on Borrower and without releasing Borrower from any Other Obligations hereunder, make any payment or do any act required of Borrower hereunder or in the other Loan Documents with respect to any Other Obligations which payment or action on the part of Lender shall be in such manner and to such extent as Lender may deem necessary to protect the security hereof.  Lender is authorized to enter upon the Property for such purposes, or appear in, defend, or bring any action or proceeding to protect its interest in the Property or to foreclose this Security Instrument or to collect the Debt, and the cost and

expense thereof (including reasonable attorneys' fees and expenses to the extent permitted by law), with interest as provided in this Section 7.3, shall constitute a portion of the Debt and shall be due and payable to Lender upon demand. All such costs and expenses incurred by Lender in remedying any Default or Event of Default or in appearing in, defending, or bringing any such action or proceeding, as hereinabove provided, shall bear interest at the Default Rate, for the period beginning on the first day after notice from Lender that such cost or expense was incurred and continuing until the date of payment to Lender. All such costs and expenses incurred by Lender, together with interest thereon calculated at the Default Rate, shall be deemed to constitute a portion of the Debt and to be secured by this Security Instrument and the other Loan Documents and shall be immediately due and payable upon demand by Lender therefor.

Section 7.4    **Actions and Proceedings**. Lender has the right to appear in and defend any action or proceeding brought with respect to the Property and to bring any action or proceeding, in the name and on behalf of Borrower, which Lender, in its sole and absolute discretion, decides should be brought to protect its interest in the Property.

Section 7.5    **Recovery of Sums Required To Be Paid**. Lender shall have the right, from time to time, to take action to recover any sum or sums which constitute a part of the Debt as the same become due, without regard to whether or not the balance of the Debt shall be due, and without prejudice to the right of Lender thereafter to bring an action of foreclosure, or any other action, for any Default or Event of Default by Borrower existing at the time such earlier action was commenced.

Section 7.6    **Examination of Books and Records**. At reasonable times and upon reasonable prior notice (which may be given verbally), Lender, its agents, accountants and attorneys shall have the right to examine the records, books and management and other papers of Borrower which reflect upon its financial condition, at the Property or at any office regularly maintained by Borrower where the books and records are located. Lender and its agents shall have the right to make copies and extracts from the foregoing records and other papers. In addition, at reasonable times and upon reasonable notice (which may be given verbally), Lender, its agents, accountants and attorneys shall have the right to examine and audit the books and records of Borrower pertaining to the income, expenses and operation of the Property during reasonable business hours at any office of Borrower where the books and records are located. This Section 7.6 shall apply throughout the term of the Note and without regard to whether an Event of Default has occurred or is continuing.

Section 7.7    **Other Rights, etc**.

(a)    The failure of Lender to insist upon strict performance of any term hereof shall not be deemed to be a waiver of any term of this Security Instrument. Borrower shall not be relieved of Borrower's obligations hereunder by reason of (i) the failure of Lender to comply with any request of Borrower or any guarantor or indemnitor with respect to the Loan to take any action to foreclose this Security Instrument or otherwise enforce any of the provisions hereof or of the Note or the other Loan Documents, (ii) the release, regardless of consideration, of the whole or any part of the Property, or of any Person liable for the Obligations or any portion thereof, or (iii) any agreement or stipulation by Lender extending the time of payment or otherwise modifying or supplementing the terms of the Note, this Security Instrument or the other Loan Documents.

(b)    It is agreed that the risk of loss or damage to the Property is on Borrower, and Lender shall have no liability whatsoever for any decline in value of the Property, for failure to maintain the Policies, or for failure to determine whether insurance in force is adequate as to the amount of risks insured. Possession by Lender shall not be deemed an election of judicial relief if any such possession is requested or obtained with respect to any Property or collateral not in Lender's possession.

(c)     Lender may resort for the payment of the Debt and the performance of the Other Obligations to any other security held by Lender in such order and manner as Lender, in its discretion, may elect. Lender may take action to recover the Debt, or any portion thereof, or to enforce the Other Obligations or any covenant hereof without prejudice to the right of Lender thereafter to foreclose this Security Instrument. The rights of Lender under this Security Instrument shall be separate, distinct and cumulative and none shall be given effect to the exclusion of the others. No act of Lender shall be construed as an election to proceed under any one provision herein to the exclusion of any other provision. Lender shall not be limited exclusively to the rights and remedies herein stated but shall be entitled to every right and remedy now or hereafter afforded at law or in equity.

**Section 7.8**     **Right to Release Any Portion of the Property**. Lender may release any portion of the Property for such consideration as Lender may require without, as to the remainder of the Property, in any way impairing or affecting the Lien or priority of this Security Instrument, or improving the position of any subordinate lienholder with respect thereto, except to the extent that the Debt shall have been reduced by the actual monetary consideration, if any, received by Lender for such release, and Lender may accept by assignment, pledge or otherwise any other property in place thereof as Lender may require without being accountable for so doing to any other lienholder. This Security Instrument shall continue as a Lien and security interest in the remaining portion of the Property.

**Section 7.9**     **Violation of Laws**.   If the Property is not in full compliance with any Legal Requirement, Lender may impose additional requirements upon Borrower in connection herewith including, without limitation, monetary reserves or financial equivalents.

**Section 7.10**     **Recourse and Choice of Remedies**. Notwithstanding any other provision of this Security Instrument or the Loan Agreement, including, without limitation, Section 3.1 of the Loan Agreement, Lender and other Indemnified Parties (as hereinafter defined) are entitled to enforce the obligations of Borrower and any guarantor or indemnitor with respect to the Loan contained in Section 8.1 herein without first resorting to or exhausting any security or collateral and without first having recourse to the Note or any of the Property, through foreclosure, exercise of a power of sale or acceptance of a deed in lieu of foreclosure or otherwise, and in the event Lender commences a foreclosure action against the Property or exercises its power of sale pursuant to this Security Instrument, Lender is entitled to pursue a deficiency judgment with respect to such obligations against Borrower and any guarantor or indemnitor with respect to the Loan. The provisions of Section 8.1 hereof are exceptions to any non-recourse or exculpation provisions in the Loan Agreement, the Note, this Security Instrument or the other Loan Documents, and Borrower and any guarantor or indemnitor with respect to the Loan are fully and personally liable for the obligations set forth in said Section 8.1 hereof. The liability of Borrower and any guarantor or indemnitor with respect to the Loan pursuant to Section 8.1 hereof is not limited to the original principal amount of the Note. Notwithstanding the foregoing, nothing herein shall inhibit or prevent Lender from foreclosing or exercising its power of sale pursuant to this Security Instrument or exercising any other rights and remedies pursuant to the Loan Agreement, the Note, this Security Instrument and the other Loan Documents, whether simultaneously with foreclosure proceedings or in any other sequence. A separate action or actions may be brought and prosecuted against Borrower pursuant to Section 8.1 hereof whether or not an action is brought against any other Person and whether or not any other Person is joined in the action or actions. In addition, Lender shall have the right but not the obligation to join and participate in, as a party if it so elects, any administrative or judicial proceedings or actions initiated in connection with any matter addressed in Article 7 or Article 8 herein.

**Section 7.11**     **Right of Entry**.   Upon reasonable notice to Borrower (which may be given verbally), Lender and its agents shall have the right to enter and inspect the Property at all reasonable times.

{00704328:4}

**Section 7.12** <u>Lender Not Obligated; Cumulative Rights</u>. Nothing in this instrument shall be construed as obligating Lender to take any action or incur any liability with respect to the Property, and all options given to Lender are for its benefit and shall and may be exercised in such order and in such combination as Lender in its sole discretion may from time to time decide. Each remedy is distinct and cumulative to all other rights and remedies under this Instrument and the Loan Documents or afforded by law or equity, and may be exercised concurrently, independently or successively, in any order whatsoever.

## ARTICLE 8

## MORTGAGE TAX INDEMNIFICATION

**Section 8.1** <u>Mortgage and/or Intangible Tax</u>. Borrower shall, at its sole cost and expense, protect, defend, indemnify, release and hold harmless the Indemnified Parties from and against any and all Losses imposed upon, incurred by or asserted against any Indemnified Parties and directly or indirectly arising out of or in any way relating to any tax on the making and/or recording of this Security Instrument, the Note or any of the other Loan Documents, but excluding any income, franchise or other similar taxes.

## ARTICLE 9

## WAIVERS

**Section 9.1** <u>Waiver of Counterclaim</u>. To the extent permitted by applicable law, Borrower hereby waives the right to assert a counterclaim, other than a mandatory or compulsory counterclaim, in any action or proceeding brought against it by Lender arising out of or in any way connected with this Security Instrument, the Loan Agreement, the Note, any of the other Loan Documents, or the Obligations.

**Section 9.2** <u>Marshalling and Other Matters</u>. TO THE EXTENT PERMITTED BY APPLICABLE LAW, BORROWER HEREBY WAIVES THE BENEFIT OF ALL APPRAISEMENT, VALUATION, STAY, EXTENSION, REINSTATEMENT AND REDEMPTION LAWS NOW OR HEREAFTER IN FORCE AND ALL RIGHTS OF MARSHALLING IN THE EVENT OF ANY SALE HEREUNDER OF THE PROPERTY OR ANY PART THEREOF OR ANY INTEREST THEREIN. FURTHER, TO THE EXTENT PERMITTED BY APPLICABLE LAW, BORROWER HEREBY EXPRESSLY WAIVES ANY AND ALL RIGHTS OF REDEMPTION FROM SALE UNDER ANY ORDER OR DECREE OF FORECLOSURE OF THIS SECURITY INSTRUMENT ON BEHALF OF BORROWER, AND ON BEHALF OF EACH AND EVERY PERSON ACQUIRING ANY INTEREST IN OR TITLE TO THE PROPERTY SUBSEQUENT TO THE DATE OF THIS SECURITY INSTRUMENT.

**Section 9.3** <u>Waiver of Notice</u>. To the extent permitted by applicable law, Borrower shall not be entitled to any notices of any nature whatsoever from Lender except with respect to matters for which this Security Instrument or the other Loan Documents specifically and expressly provide for the giving of notice by Lender to Borrower and except with respect to matters for which Lender is required by applicable law to give notice, and Borrower hereby expressly waives the right to receive any notice from Lender with respect to any matter for which this Security Instrument does not specifically and expressly provide for the giving of notice by Lender to Borrower.

**Section 9.4** <u>Waiver of Statute of Limitations</u>. To the extent permitted by applicable law, Borrower hereby expressly waives and releases its right to plead any statute of limitations as a defense to payment of the Debt or performance of the Other Obligations.

**Section 9.5      Waiver of Jury Trial.** BORROWER HEREBY AGREES NOT TO ELECT A TRIAL BY JURY OF ANY ISSUE TRIABLE OF RIGHT BY JURY, AND FOREVER WAIVES ANY RIGHT TO TRIAL BY JURY FULLY TO THE EXTENT THAT ANY SUCH RIGHT SHALL NOW OR HEREAFTER EXIST WITH REGARD TO THE NOTE, THIS SECURITY INSTRUMENT OR THE OTHER LOAN DOCUMENTS, OR ANY CLAIM, COUNTERCLAIM OR OTHER ACTION ARISING IN CONNECTION THEREWITH. THIS WAIVER OF RIGHT TO TRIAL BY JURY IS GIVEN KNOWINGLY AND VOLUNTARILY BY BORROWER, AND IS INTENDED TO ENCOMPASS INDIVIDUALLY EACH INSTANCE AND EACH ISSUE AS TO WHICH THE RIGHT TO A TRIAL BY JURY WOULD OTHERWISE ACCRUE. LENDER IS HEREBY AUTHORIZED TO FILE A COPY OF THIS PARAGRAPH IN ANY PROCEEDING AS CONCLUSIVE EVIDENCE OF THIS WAIVER BY BORROWER.

## ARTICLE 10

## EXCULPATION

The provisions of Section 3.1 of the Loan Agreement are hereby incorporated by reference into this Security Instrument to the same extent and with the same force as if fully set forth herein.

## ARTICLE 11

## NOTICES

All notices or other written communications hereunder shall be delivered in accordance with Section 10.6 of the Loan Agreement.

## ARTICLE 12

## APPLICABLE LAW

**Section 12.1      GOVERNING LAW; JURISDICTION; SERVICE OF PROCESS. THIS SECURITY INSTRUMENT WILL BE GOVERNED AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE IN WHICH THE PROPERTY IS LOCATED (WITHOUT REGARD TO CONFLICT OF LAW PROVISIONS THEREOF). ALL PROVISIONS OF THE LOAN AGREEMENT INCORPORATED HEREIN BY REFERENCE SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE IN WHICH THE PROPERTY IS LOCATED.**

**Section 12.2      Provisions Subject to Applicable Law.** All rights, powers and remedies provided in this Security Instrument may be exercised only to the extent that the exercise thereof does not violate any applicable provisions of law and are intended to be limited to the extent necessary so that they will not render this Security Instrument invalid, unenforceable or not entitled to be recorded, registered or filed under the provisions of any applicable law. If any term of this Security Instrument or any application thereof shall be invalid or unenforceable, the remainder of this Security Instrument and any other application of the term shall not be affected thereby.

## ARTICLE 13

## DEFINITIONS

Unless the context clearly indicates a contrary intent or unless otherwise specifically provided herein, words used in this Security Instrument may be used interchangeably in the singular or plural form and the word "Borrower" shall mean "each Borrower and any subsequent owner or owners of the Property or any part thereof or any interest therein," the word "Lender" shall mean "Lender and any subsequent holder of the Note," the word "Note" shall mean "the Note and any other evidence of indebtedness secured by this Security Instrument," the word "Property" shall include any portion of the Property and any interest therein, and the phrases "attorneys' fees", "legal fees" and "counsel fees" shall include any and all attorneys', paralegal and law clerk fees and disbursements, including, but not limited to, fees and disbursements at the pre-trial, trial and appellate levels incurred or paid by Lender in protecting its interest in the Property, the Leases and the Rents and enforcing its rights hereunder. Whenever the context may require, any pronouns used herein shall include the corresponding masculine, feminine or neuter forms and the singular form of nouns and pronouns shall include the plural and vice versa.

## ARTICLE 14

## MISCELLANEOUS PROVISIONS

**Section 14.1    No Oral Change.**  This Security Instrument, and any provisions hereof, may not be modified, amended, waived, extended, changed, discharged or terminated orally or by any act or failure to act on the part of Borrower or Lender, but only by an agreement in writing signed by the party(ies) against whom enforcement of any modification, amendment, waiver, extension, change, discharge or termination is sought.

**Section 14.2    Successors and Assigns**.  This Security Instrument shall be binding upon and shall inure to the benefit of Borrower and Lender and their respective successors and permitted assigns, as set forth in the Loan Agreement.  Lender shall have the right to assign or transfer its rights under this Security Instrument in connection with any assignment of the Loan and the Loan Documents.  Any assignee or transferee of Lender shall be entitled to all the benefits afforded to Lender under this Security Instrument.  Borrower shall not have the right to assign or transfer its rights or obligations under this Security Instrument without the prior written consent of Lender, as provided in the Loan Agreement, and any attempted assignment without such consent shall be null and void.

**Section 14.3    Inapplicable Provisions**.  If any term, covenant or condition of the Loan Agreement, the Note or this Security Instrument is held to be invalid, illegal or unenforceable in any respect, the Loan Agreement, the Note and this Security Instrument shall be construed without such provision.

**Section 14.4    Headings, etc**.  The headings and captions of the various Sections of this Security Instrument are for convenience of reference only and are not to be construed as defining or limiting, in any way, the scope or intent of the provisions hereof.

**Section 14.5    Subrogation**.  If any or all of the proceeds of the Note have been used to extinguish, extend or renew any indebtedness heretofore existing against the Property, then, to the extent of the funds so used, Lender shall be subrogated to all of the rights, claims, liens, titles, and interests existing against the Property heretofore held by, or in favor of, the holder of such indebtedness and such former rights, claims, liens, titles, and interests, if any, are not waived but rather are continued in full

force and effect in favor of Lender and are merged with the lien and security interest created herein as cumulative security for the payment of the Debt, the performance and discharge of Borrower's obligations hereunder, under the Loan Agreement, the Note and the other Loan Documents and the performance and discharge of the Other Obligations.

Section 14.6   **Entire Agreement**.  The Note, the Loan Agreement, this Security Instrument and the other Loan Documents constitute the entire understanding and agreement between Borrower and Lender with respect to the transactions arising in connection with the Obligations and supersede all prior written or oral understandings and agreements between Borrower and Lender with respect thereto. Borrower hereby acknowledges that, except as incorporated in writing in the Note, the Loan Agreement, this Security Instrument and the other Loan Documents, there are not, and were not, and no Persons are or were authorized by Lender to make, any representations, understandings, stipulations, agreements or promises, oral or written, with respect to the transaction which is the subject of the Note, the Loan Agreement, this Security Instrument and the other Loan Documents.

Section 14.7   **Limitation on Lender's Responsibility**.   No provision of this Security Instrument shall operate to place any obligation or liability for the control, care, management or repair of the Property upon Lender, nor shall it operate to make Lender responsible or liable for any waste committed on the Property by the tenants or any other Person, or for any dangerous or defective condition of the Property, or for any negligence in the management, upkeep, repair or control of the Property resulting in loss or injury or death to any tenant, licensee, employee or stranger.  Nothing herein contained shall be construed as constituting Lender a "mortgagee in possession."

Section 14.8   **Principles of Construction**.   In the event of any inconsistencies between the terms and conditions of this Security Instrument and the terms and conditions of the Loan Agreement, the terms and conditions of the Loan Agreement shall control and be binding.

Section 14.9   **Severability**.   In case any one or more of the provisions of this Security Instrument, the Note, the Assignment of Leases and Rents, the Loan Agreement, any of the other Loan Documents, or any other agreement now or hereafter executed in connection with any one or more of the foregoing is held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision hereof or thereof.  Each of the provisions of every such agreement, document or instrument shall be enforceable by Lender to the fullest extent now or hereafter permitted by law.

Section 14.10   **No Partnership or Joint Venture**.   No provision of this Security Instrument or any of the other Loan Documents shall constitute a partnership, joint venture, tenancy in common or joint tenancy between Borrower and Lender, it being intended that the only relationship created by this Security Instrument, the Loan Agreement, the Note and the other Loan Documents shall be that of debtor and creditor.

Section 14.11   **No Merger.**   So long as the Obligations owed to Lender secured hereby remain unpaid and undischarged and unless Lender otherwise consents in writing, the fee, leasehold, subleasehold and sub-subleasehold estates in and to the Property will not merge but will always remain separate and distinct, notwithstanding the union of such estates (without implying Borrower's consent to such union) either in Borrower, Lender, any tenant or any third party by purchase or otherwise, in the event this Security Instrument is originally placed on a leasehold estate and Borrower later obtains fee title to the Property, such fee title will be subject and subordinate to this Security Instrument.

## ARTICLE 15

### STATE-SPECIFIC PROVISIONS

**Section 15.1    Principles of Construction**.  In the event of any inconsistencies between the terms and conditions of this Article 15 and the terms and conditions of this Security Instrument, the terms and conditions of this Article 15 shall control and be binding.

**Section 15.2    Certain Matters Relating to the Laws of the State of New York**. Notwithstanding any provision hereof or of any other Loan Document to the contrary, the following provisions shall apply:

(a)    **Section 254 of the RPL**.  In the event of any conflict, inconsistency or ambiguity between the provisions of the Loan Documents and the provisions of subsection 4 of Section 254 of the Real Property Law of New York, the provisions of the Loan Documents shall control.

(b)    **Section 291-f of the RPL**.  In addition to any other right or remedy contained herein or in any other Loan Document, Lender shall have all of the rights against lessees of the Property or any part thereof as are set forth in Section 291-f of the Real Property Law of New York.

(c)    **Trust Fund**.  Pursuant to Section 13 of the Lien Law of New York, Borrower shall receive the advances secured hereby and shall hold the right to receive such advances as a trust fund to be applied first for the purpose of paying the cost of any improvement and shall apply such advances first to the payment of the cost of any improvement before using any part thereof for any other purpose. Borrower shall comply strictly with Section 13-f of the Lien Law of New York.

(d)    **Commercial Property**.  Borrower represents and warrants that this Mortgage does not encumber real property principally improved or to be improved by one or more structures containing in the aggregate not more than six (6) residential dwelling units having their own separate cooking facilities.

(e)    **Transfer Tax Provisions**.  (i) Borrower covenants and agrees that, in the event of a sale of the Property or other Transfer, it will duly complete, execute and deliver to Lender contemporaneously with the submission to the applicable taxing authority or recording officer, all forms and supporting documentation required by such taxing authority or recording officer to estimate and fix any and all applicable state and local real estate transfer taxes (collectively, "***Transfer Taxes***") by reason of such sale or other Transfer or recording of the deed evidencing such sale or other Transfer.

(ii)    Borrower shall pay all Transfer Taxes that may hereafter become due and payable with respect to any Transfer, and in default thereof Lender may pay the same and the amount of such payment shall be added to the Debt and, unless incurred in connection with a foreclosure of this Mortgage, be secured by this Mortgage.  The provisions of this Section shall survive any Transfer and the delivery of the deed in connection with any Transfer.

(f)    **Maximum Principal Amount**.  NOTWITHSTANDING ANY PROVISION SET FORTH HEREIN TO THE CONTRARY, THE MAXIMUM AMOUNT OF PRINCIPAL INDEBTEDNESS SECURED BY THIS SECURITY INSTRUMENT AT EXECUTION, OR WHICH UNDER ANY CONTINGENCY MAY BECOME SECURED HEREBY AT ANY TIME HEREAFTER, IS U.S. **$3,530,000.00** PLUS ALL INTEREST PAYABLE UNDER THE NOTE AND ALL AMOUNTS EXPENDED BY LENDER AFTER DEFAULT BY BORROWER: (A) FOR THE PAYMENT OF TAXES, CHARGES OR ASSESSMENTS WHICH MAY BE IMPOSED BY LEGAL REQUIREMENTS UPON THE MORTGAGED PROPERTY; (B) TO MAINTAIN THE INSURANCE

{00704328;4}

REQUIRED UNDER THIS SECURITY INSTRUMENT; (C) FOR ANY EXPENSES INCURRED IN MAINTAINING THE SECURITY INSTRUMENT PROPERTY AND UPHOLDING THE LIEN OF THIS SECURITY INSTRUMENT, INCLUDING, BUT NOT LIMITED TO, THE EXPENSE OF ANY LITIGATION TO PROSECUTE OR DEFEND THE RIGHTS AND LIEN CREATED BY THIS SECURITY INSTRUMENT, AND (D) FOR ANY AMOUNT, COST OR CHARGE TO WHICH MORTGAGEE BECOMES SUBROGATED, UPON PAYMENT, WHETHER UNDER RECOGNIZED PRINCIPLES OF LAW OR EQUITY, OR UNDER EXPRESS STATUTORY AUTHORITY, TOGETHER WITH INTEREST ON ALL OF THE FOREGOING AMOUNTS AT THE DEFAULT RATE (AS DEFINED IN THE LOAN AGREEMENT).

(g)     **Covenants in Addition to RPL**.  All covenants hereof shall be construed as affording to Lender rights in addition to and not exclusive of the rights conferred under the provisions of Sections 254, 271, 272 and 291-f of the Real Property Law of the State of New York or any other applicable laws.

(h)     **Non-Judicial Foreclosure**.  If an Event of Default shall occur hereunder, Lender may elect to sell the Property or any part thereof by exercise of the power of foreclosure or of sale granted to Lender by Article 13 of the Real Property Actions and Proceedings Law of the State of New York (the "***RPAPL***").  In such case, Lender may commence a civil action to foreclose this Security Instrument pursuant to and in accordance with Article 13 of the RPAPL.

[THE REMAINDER OF THE PAGE IS INTENTIONALLY DELETED]

IN WITNESS WHEREOF, this Security Instrument has been executed by Borrower as of the day and year first above written.

**BORROWER:**

**249 W. 49TH STREET, LLC**, a
New York limited liability company

By:    249 W 49 Corp, a
        New York corporation, its Managing Member

By:_____
Name:      Rakesh Aggarwal
Title:       President

## ACKNOWLEDGMENT

STATE OF NEW YORK     )
                        : ss.:
COUNTY OF NEW YORK   )

On the _17th_ day of August, in the year 2012, before me, the undersigned personally appeared **RAKESH AGGARWAL**, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
Signature and Office of individual
taking acknowledgment

**SEAL**

STEPHANIE MICHALEWICZ
Notary Public, State of New York
No. 01MI4820025
Qualified in Nassau County
Commission Expires March 30, 20_1_

CANTOR COMMERCIAL REAL ESTATE LENDING, L.P., a Delaware limited partnership, holder of the Original Mortgages, signs below to acknowledge its consent to the terms of this Amended, Restated and Consolidated Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing.

**LENDER:**

**CANTOR COMMERCIAL REAL ESTATE LENDING, L.P.**, a Delaware limited partnership

By: _____

Name: **Jill Weinstein**

Title: **Secretary**

**ACKNOWLEDGMENT**

STATE OF NEW YORK )
: ss.:
COUNTY OF NEW YORK )

On the _15_ day of August, in the year 2012, before me, the undersigned personally appeared _Jill Weinstein_, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
Signature and Office of individual
taking acknowledgment

**SEAL**

SPENCER M. GANZ
Notary Public, State of New York
No. 01GA6248958
Qualified in Nassau County
Commission Expires 09/26/2015

*Signature Page to Mortgage and Security Agreement*

## EXHIBIT "A"

[LEGAL DESCRIPTION]

ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the City, County and State of New York, more particularly described as follows:

BEGINNING at a point on the northerly side of 49th Street, distant one hundred feet easterly from the corner formed by the intersection of the easterly side of Eighth Avenue with the northerly side of 49th Street;

RUNNING THENCE northerly and parallel with the said easterly side of Eighth Avenue, one hundred feet five inches to the center line of the block;

THENCE easterly and parallel with the said northerly side of 49th Street, twenty-five feet;

THENCE southerly and again parallel with the said easterly side of Eighth Avenue, one hundred feet five inches to the said northerly side of 49th Street;

THENCE westerly along the said northerly side of 49th Street, twenty-five feet, to the point or place of BEGINNING.

## SCHEDULE "A"

### EXISTING MORTGAGES

1.  Mortgage made by 249 W. 49th Street, LLC to Habib American Bank, in the amount of $2,800,000.00 dated December 12, 2008 and recorded December 31, 2008 as CRFN 2008000492524 with the Office of the City Register of New York County, New York; and

    Which above mortgage was assigned by Assignment of Mortgage from Habib American Bank to Cantor Commercial Real Estate Lending, L.P. dated as of October _24_, 2012 and intended to be recorded with said City Register; and _unpaid principal balance :$2,617,313.73_ _simultaneously herewith_

2.  Gap Mortgage, Assignment of Leases and Rents and Security Agreement made by 249 W. 49th Street, LLC to Cantor Commercial Real Estate Lending, L.P., in the amount of $912,686.27 dated as of October _24_, 2012 and intended to be recorded with said City Register; and

    _simultaneously herewith_

## SCHEDULE "B"

EXISTING NOTES

1.  Promissory Note made by 249 W. 49th Street, LLC to Habib American Bank, in the amount of $2,800,000.00 dated December 12, 2008;

2.  Gap Secured Promissory Note made by 249 W. 49th Street, LLC to Cantor Commercial Real Estate Lending, L.P., in the principal amount of $912,686.27 dated as of October 2 4, 2012.

{00704328;4}



**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

2012121100820003001SEA97

| SUPPORTING DOCUMENT COVER PAGE | PAGE 1 OF 1 |
|---|---|

**Document ID:** 2012121100820003   Document Date: 10-24-2012   Preparation Date: 12-11-2012
Document Type: AGREEMENT

**SUPPORTING DOCUMENTS SUBMITTED:**

Page Count

255 MORTGAGE TAX EXEMPT AFFIDAVIT                                    3

## 255 AFFIDAVIT

## (Amended, Restated and Consolidated Mortgage)

STATE OF NEW YORK      )
: ss.:
COUNTY OF NEW YORK    )

The undersigned, **RAKESH AGGARWAL**, as President of 249 W 49 Corp. which is the managing member of **249 W. 49TH STREET, LLC**, a New York limited liability company, the borrower hereunder ("**Mortgagor**"), being duly sworn, deposes and says that he is familiar with the following facts:

1.      That the mortgages set forth on EXHIBIT "A" hereto securing the aggregate principal amount of **$3,530,000.00** owned or held by **CANTOR COMMERCIAL REAL ESTATE LENDING, L.P.**, a Delaware limited partnership ("**Mortgagee**"), were duly recorded as set forth in EXHIBIT "A", and that all mortgage recording tax payable thereon has been paid.

2.      That an Amended, Restated and Consolidated Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing (the "**Mortgage**"), dated as of October 2⁴, 2012 by and between Mortgagor and Mortgagee is being tendered herewith for recording in the Office of the City Register, County of New York, State of New York and that no mortgage recording tax is payable thereon.

3.      That the Mortgage herewith submitted for recording does not create or secure any new or further indebtedness other than the principal indebtedness or obligation secured by, or which under any contingency may be secured by the mortgages described in Paragraph 1 hereof.

4.      That this affidavit is being made pursuant to Section 255 of the Tax Law of the State of New York for the purpose of claiming exemption from any additional tax on recording of the Mortgage being submitted herewith.

## [NO FURTHER TEXT ON THIS PAGE]

{00704946:4}

**249 W. 49TH STREET, LLC**, a
New York limited liability company

By: 249 W 49 Corp., a
   New York corporation, its Managing Member

By:_____
Name:  Rakesh Aggarwal
Title:   President

Sworn to before me this
/7H day of August, 2012

_____
NOTARY PUBLIC

STEPHANIE MICHALEWICZ
Notary Public, State of New York
No. 01MI4820025
Qualified in Nassau County
Commission Expires March 30, 20 14

SEAL

## EXHIBIT "A"
### (Schedule of Mortgages)

1.  Mortgage made by 249 W. 49th Street, LLC to Habib American Bank, in the amount of $2,800,000.00 dated December 12, 2008 and recorded December 31, 2008 as CRFN 2008000492524 with the Office of the City Register of New York County, New York; and _Tax da:D: $78,400.33_

    Which above mortgage was assigned by Assignment of Mortgage from Habib American Bank to Cantor Commercial Real Estate Lending, L.P. dated as of October _24_, 2012 and intended to be recorded with said City Register and _unpaid principal balance: $2,617,313.73 simultaneously herewith_

2.  Gap Mortgage, Assignment of Leases and Rents and Security Agreement made by 249 W. 49th Street, LLC to Cantor Commercial Real Estate Lending, L.P., in the amount of $912,686.27 dated as of October _24_, 2012 and intended to be recorded with said City Register _simultaneously herewith. Tax da:D: $25,555.61_